Philip H. Stillman, Esq. SBN# 152861
STILLMAN & ASSOCIATES
3015 North Bay Road, Suite B
Miami Beach, Florida 33140
Tel. and Fax:  (888) 235-4279
pstillman@stillmanassociates.com

Attorneys for defendant ORANGEWOOD LLC.

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STROJNIK,<br><br>                 Plaintiff,<br>    vs.<br><br>ORANGEWOOD LLC, DBA DOUBLE TREE SUITES BY HILTON HOTEL ANAHEIM RESORT - CONVENTION CENTER<br><br>                 Defendant. | Case No. 8:19-cv-00946-DSF-GJSx<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6)**<br><br>Date:  October 21, 2019<br>Courtroom: 7D<br>Time: 1:30 p.m.<br><br>Hon. Dale S. Fischer<br><br>Complaint filed: May 29, 2019 |

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NEW STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   STROJNIK'S NEW ALLEGATIONS THAT CONTRADICT HIS EARLIER PLEADING SHOULD BE DISREGARDED . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  STROJNIK STILL LACKS STANDING OR FAILS TO STATE A CLAIM UNDER THE ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.  The FAC Still Fails To Establish Standing Under The ADA . . . . . . . . 4

     B.  Strojnik Has No Standing To Sue Based On The Contents Of Third Party Booking Sites. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     C.  Strojnik Cannot Show An Injury In Fact. . . . . . . . . . . . . . . . . . . . . . 5

          1.  Strojnik Encountered No Barrier To The Use Of Defendant's Facilities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

               a.  Strojnik Encountered No Cognizable Barriers When Viewing Websites. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

               b.  Strojnik Does not Identify Architectural Barriers He Actually Experienced During His Purported "Visit." . . . . 6

          2.  Defendant's Website Does Not Interfere With Strojnik's Actual Enjoyment Of The Hotel. . . . . . . . . . . . . . . . . . . . . . . . . 8

          3.  The DOJ Has Opined That The Regulations Only Require A "Place Of Public Accommodation" To Provide Reasonable Alternatives. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     D.  Strojnik Cannot Show That Any Injuy Is "Imminent.". . . . . . . . . . . . 11

     E.  There Is No Causal Connection Between Any Alleged "Injury" And Defendant's Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     F.  Plaintiff Lacks Standing To Claim Injunctive Relief. . . . . . . . . . . . . 15

III. STROJNIK STILL LACKS STANDING PURSUANT TO CALIFORNIA'S UNRUH ACT TO BRING HIS SECOND AND THIRD CAUSES OF ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.  STROJNIK DOES NOT HAVE A SEPARATE CLAIM UNDER THE UNRUH ACT FOR THE IDENTICAL CONDUCT THAT IS THE BASIS OF STROJNIK'S DISABLED PERSONS ACT CLAIM. . . . . . . . . . . . . . . . . . 18

V.    PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED FOR
      FAILING TO STATE A CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      A.    There Is No Viable Negligence Claim. . . . . . . . . . . . . . . . . . . . 20

      B.    Negligence Cannot Be Based On The ADA . . . . . . . . . . . . . . . . . 20

VI.   THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
      JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VII.  COLLATERAL ESTOPPEL SHOULD BAR THE CLAIMS HERE . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

*Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1321 (S.D. Fla. 2002)...... 9

*Advocates for Individuals with Disabilities LLC v. WSA Props. LLC*, 210 F. Supp. 3d 1213, 1221-22 (D. Ariz. 2016) ............................................... 14

*Ariz. ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir. 2010) .. 9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................... 2

*Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)......... 11

*Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002)............... 4

*Brooke v. Choice Hotels Int'l, Inc.*, 2016 U.S. Dist. LEXIS 60062, at pp. 7-8 (S.D. Cal. May 5, 2016) ......................................................... 12

*Brooke v. H&K P'ship*, 2016 U.S. Dist. LEXIS 148572, at 5 (E.D. Cal. Oct. 26, 2016) .. 15

*Brooke v. Newport Hotel Holding LLC*, 2016 U.S. Dist. LEXIS 187101, at 9 n.3 (C.D. Cal. Apr. 29, 2016)......................................................... 12

*Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979) ................. 4

*California Service Station etc. Assn. v. American Home Assurance Co.* 62 Cal.App.4th 1166, 1178 (1998) ........................................................ 19

*Chapman v. Pier 1 Imports, Inc.,* 631 F.3d 939, 946 (9th Cir. 2011).......... 4-6, 14, 15

*Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1663 (2000)......... 11

*Colliton v. Cravath, Swaine & Moore LLP*, 2008 U.S. Dist. LEXIS 74388 at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd sub nom. Colliton v. Cravath, Swain & Moore LLP*, 356 F. App'x 535 (2d Cir. 2009) ........................................................ 2

*Cross v. Pac. Coast Plaza Invs., L.P.*, 2007 U.S. Dist. LEXIS 16138 at *5 (S.D. Cal. Mar. 6, 2007) ............................................................. 23

*Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518 (9th Cir. 1985) ................. 23

*Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 (9th Cir. 2008)....................... 5

*Exec. Software N. Am., Inc. v. Jensen*, 24 F.3d 1545, 1551 (9th Cir. 1994)............ 21

*Gomez v. Bang & Olufsen Am., Inc.*, 2017 U.S. Dist. LEXIS 15457, *12-13 (S.D. Fla. Feb. 2, 2017)............................................................. 5, 9

*Gorecki v. Dave & Buster's, Inc.*, 2017 U.S. Dist. LEXIS 187208, at *14 (C.D. Cal. Oct. 10, 2017)............................................................. 10

*Guerra v. W. L.A. Coll.*, 2018 U.S. Dist. LEXIS 141029, at *19-20 (C.D. Cal. Aug. 20, 2018).......................................................... 20, 21

*Harris v. Del Taco, Inc.*, 396 F. Supp. 2d 1107, 1113 (C.D. Cal. 2005). . . . . . . . . . . . . . . 12

*Haynes v. Genesco, Inc.*, 2018 U.S. Dist. LEXIS 5939, at *5 (S.D. Fla. Jan. 11, 2018) . . . 9

*In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Jankey v. Lee*, 55 Cal.4th 1038, 1045, 150 Cal. Rptr. 3d 191, 290 P.3d 187 (2012) . . . . . 18

*Konkol v. Oakwood Worldwide Local, LLC*, 2015 U.S. Dist. LEXIS 67, at *12-13 (C.D. Cal. Jan. 2, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1164 (C.D. Cal. 2005) . . . . . . . . . . . . . . 12

*Org. for the Advancement of Minorities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1132 (S.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*PAE Gov't Servs., Inc. v. MPRI, Inc.,* 514 F.3d 856, 860 (9th Cir. 2007) . . . . . . . . . . . . . 2

*Reycraft v. Lee*, 177 Cal. App. 4th 1211 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reycraft v. Lee*, 177 Cal. App. 4th 1211, 1224 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949, 958-59 (2007). . . . . . . . . . . . . . . . . . . . . 19

*Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1076 (N.D. Cal. 2014) . . . . . . . . . . . . . 16

*Rowell v. Zamora*, 2018 U.S. Dist. LEXIS 42983, at *5 (E.D. Cal. Mar. 14, 2018) . . . . . . 2

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). . . . . . . . . . . . . . . . 2

*Salazar v. Eastin,* 9 Cal.4th 836, 857 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Scarborough v. Brown Group, Inc.*, 935 F. Supp. 954, 964 (W.D. Tenn. 1995) . . . . . . . . 21

*Scarola Malone & Zubatov LLP v. Verizon Communs., Inc.*, 2015 U.S. Dist. LEXIS 82053 at *5 (S.D.N.Y. June 24, 2015) (Castel, J.) (collecting cases), *aff'd sub nom. Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100 (2nd Cir. 2016). 2

*Schelb v. Stein* 190 Cal.App.4th 1440, 1448 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Schutza v. Cuddeback*, 262 F.Supp.3d 1025 (S.D. Cal. 2017) . . . . . . . . . . . . . . . . . . . . . 22

*Schutza v. Lamden*, 2018 U.S. Dist. LEXIS 157396, at *9 (S.D. Cal. Sep. 14, 2018) . . . . 22

*Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972). . . . . . 5

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944). . . . . . . 11

*Spokeo, Inc. v. Robins*, _U.S._, p 8, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016). . . . 4, 6

*St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . 2

*Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) . . . . . . . . . . . 4

*Strojnik v. Pasadena Robles Acquisition, LLC*, Case No. 2:19-CV-02067-AB (PJWx) (C.D.Cal. August 14, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 10, 12, 13

*Summers v. Earth Island Inst.*, 555 U.S. 488, 496, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) 12

*Surrey v. TrueBeginnings, LLC* 168 Cal. App. 4th 414, 419 (2008) . . . . . . . . . . . . . . . . . 18

*United States v. AMC Entm't, Inc.*, 245 F.Supp.2d 1094, 1100 (C.D. Cal. 2003) . . . . . . . 10

*United States v. Hays*, 515 U.S. 737, 742 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Urhausen v. Longs Drug Stores Cal., Inc.*, 155 Cal. App. 4th 254, 265-66 (2007) . . . . . . 17

*Vigil v. Leavitt*, 381 F.3d 826, 835 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Westbrook v. DTG Operations, Inc.*, 2007 U.S. Dist. LEXIS 14653, at *18-19 (D. Nev. Feb. 28, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zimmerman v. GJS Grp.*, 2018 U.S. Dist. LEXIS 148816, at *15-16 (D. Nev. Aug. 30, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# INTRODUCTION

Defendant ORANGEWOOD LLC moves to dismiss all causes of action of the First Amended Complaint ("FAC") for lack of standing.  Strojnik is a lawyer of significant notoriety in Arizona who was disbarred from the practice of law in Arizona as a result of his serial – and fraudulent – ADA lawsuits.  In the words of the State of Arizona, Peter Strojnik engaged in "one of the largest... abuses of Arizona state and federal courts in their history." The State of Arizona contended that Strojnik "pursued upwards of 160 cookie cutter lawsuits in federal court and, from early to later 2016, more than 1700 such suits in Arizona state court." In 2017, the Attorney General's Office for the State of Arizona took the extraordinary action to intervene in a case for the purpose of having Strojnik declared a vexatious litigant.  The Arizona State Bar also took action against Peter Strojnik, noting in a State Bar Complaint: "[C]ourts have referred to [Strojnik's] actions in bringing the ADA... lawsuits as 'extortionate' and 'ethically suspect.' *Id.* Strojnik's First Amended Complaint shows that disbarment has not tempered Strojnik's willingness to say anything to try to prevent his complaint from being dismissed.

Plaintiff's Complaint was filed on May 29, 2019, alleging a violation of the ADA based on alleged "website access" claims.  It was dismissed by this Court on August 8, 2019 with leave to amend. [ECF 18]  However, Strojnik has still failed to remedy the lack of standing, while adding implausible allegations such now claiming that he actually went to Defendant's hotel, when in his Complaint, he alleged that he learned of the alleged barriers by looking at the hotel's website - a direct contradiction that makes his new allegation "implausible." Strojnik has never visited the hotel and therefore did not actually experience any alleged "barriers."  All of Strojnik's ADA claims are also defective as his vague allegations of an intent to stay at a hotel in the Anaheim area at some point in the future are insufficient as a matter of law to establish the "imminent injury" element of Article III standing.  In addition, given that his state law claims predominate over the implausible federal claim, this Court should decline to exercise supplemental jurisdiction.  Accordingly, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and

1    (6), without leave to amend.

2                          **NEW STATEMENT OF FACTS**

3           Peter Strojnik ("Plaintiff") claims to be legally disabled due to a severe right-sided

4    neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer and renal

5    cancer, and a degenerative right knee. FAC ¶ 3. Defendant owns or leases the Doubletree

6    hotel located at 2085 S. Harbor Blvd., Anaheim, CA 92802. *Id.* ¶ 4.

7           Plaintiff intended to visit Disneyland area and reviewed hotel booking websites to

8    find lodging. *Id.* ¶ 22. Plaintiff used third party booking websites and encountered

9    Defendants' hotel. *Id.* ¶ 31. The third party booking websites did not identify and describe

10   the accessibility features of Defendant's hotel. *Id.* ¶ 33-34.  Plaintiff then looked

11   on Defendant's first party website. *Id.*, ¶¶36-37. Plaintiff alleges that Defendant's website

12   "failed to identify and describe mobility related accessibility features and guest

13   rooms" in enough detail to allow Plaintiff to asses whether Defendant's hotel met his

14   accessibility needs. *Id.* Plaintiff then reviewed online photos of Defendant's hotel,

15   provided in Addendum A, which Plaintiff argues disclose architectural barriers to

16   accessibility that violated the ADA and deny Plaintiff equal access. *Id.*  ¶¶ 36-37.  Plaintiff

17   alleges that the ADA violations depicted in the photos in Addendum A "interfere with

18   Plaintiff's full and complete enjoyment of the [h]otel" and as a result, Plaintiff did not book

19   a room at Defendant's hotel. *Id.* ¶¶ 38, 42.  In a new but irrelevant allegation, and in direct

20   contradiction to his allegations in the Complaint, which attached the same Addendum A,

21   Plaintiff now implausibly claims that he personally visited the Doubletree "on or about

22   March 14-15" and rather than viewing the alleged architectural barriers on a website,

23   alleges to have experienced some undisclosed architectural barriers.  *Id.*, ¶ 38.  However,

24   Plaintiff does not identify which alleged barriers he experienced and which he viewed on a

25   website.  Moreover, Plaintiff now contends that he booked a room at Anaheim Marriott

26   Suites for March 14-16, 2019. *Id.*, ¶42.  Thus, Plaintiff had no bona fide intent to use the

27   Doubletree, since if he visited the hotel on March 15, as he alleges, he was already staying

28   at another hotel.

1    Plaintiff asserts claims under the ADA, the Unruh Civil Rights Act, Cal. Civ.

2   Code § 51–53 ("Unruh Act"), the California Disabled Persons Act, Cal. Civ. Code §§

3   54–54.3 ("DPA"), and a negligence claim. This Court has previously dismissed his

4   complaint on August 8 and Defendant now moves to dismiss all claims with prejudice.

5                                **ARGUMENT**

6                                   **I.**

7   **STROJNIK'S NEW ALLEGATIONS THAT CONTRADICT HIS EARLIER**

8              **PLEADING SHOULD BE DISREGARDED**

9         Although this Court generally accepts well-pled allegations in a complaint as true, a

10  court is "not bound to accept as true a legal conclusion couched as a factual allegation."

11  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[N]aked assertion[s]" or "[t]hreadbare recitals

12  of the elements of a cause of action, supported by mere conclusory statements," are not

13  entitled to a presumption of truth. *Id.*

14        However, as here, where the motion attacks the plaintiff's standing on factual

15  grounds, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe*

16  *Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a factual

17  dispute as to the existence of subject matter jurisdiction, the Court may review extrinsic

18  evidence beyond the complaint without converting a motion to dismiss into one for

19  summary judgment. *Id.* Once the moving party has made a factual challenge by offering

20  affidavits or other evidence to dispute the allegations in the complaint, the party opposing

21  the motion must "present affidavits or any other evidence necessary to satisfy its burden of

22  establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of*

23  *Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High Sch.*

24  *Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).  Defendant is making a factual

25  challenge to Strojnik's standing and therefore the Court need not presume the truthfulness

26  of Plaintiff's allegations, particularly those that directly contradict his prior allegations.

27        Because the Court need not accept the factual allegations as true, the Court should

28

1    disregard those allegations in the FAC that directly contradict allegations in the complaint.[1]

2    *Scarola Malone & Zubatov LLP v. Verizon Communs., Inc.*, 2015 U.S. Dist. LEXIS 82053

3    at *5 (S.D.N.Y. June 24, 2015) (Castel, J.) (collecting cases), *aff'd sub nom. Scarola*

4    *Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100 (2nd Cir. 2016).

5    Such circumstances arise when the amended complaint "blatantly" and "directly

6    contradicts" the earlier statement of the facts to address arguments raised in a motion to

7    dismiss. *Colliton v. Cravath, Swaine & Moore LLP*, 2008 U.S. Dist. LEXIS 74388 at *6

8    (S.D.N.Y. Sept. 24, 2008), *aff'd sub nom. Colliton v. Cravath, Swain & Moore LLP*, 356 F.

9    App'x 535 (2nd Cir. 2009).  Even if not conclusive admissions, allegations in an earlier

10    complaint are evidentiary admissions. C. Wright, A. Miller and M.K. Kane, 6 Federal

11    Practice and Procedure: Civil 2d § 1476 at 558. *Rowell v. Zamora*, 2018 U.S. Dist. LEXIS

12    42983, at *5 (E.D. Cal. Mar. 14, 2018)(allegations in superseded complaint admissible

13    evidence on summary judgment).  Defendant is thus entitled to offer those evidentiary

14    admissions in connection with a motion pursuant to Fed.R.Civ.P. 12(b)(1).

15          Here, Strojnik has made material allegations in the FAC that directly contradict the

16    allegations in the Complaint.

| ALLEGATION IN COMPLAINT | ALLEGATION IN FAC |
|---|---|
| 22. Plaintiff thereafter reviewed Defendant's online information relating to accessibility or lack thereof, including in particular photographs of the amenities at the Hotel all as more fully documented in Addendum A.<br><br>23.  Online information relating to accessibility or lack thereof disclosed architectural barriers to accessibility as more fully documented in Addendum A. [Note that Addendum A is identical in both the complaint and the FAC] | 38. *Plaintiff personally visited Defendant's Hotel* on or about March 14-15, 2019, and personally encountered architectural barriers to accessibility which interfered with his full and equal enjoyment of the facility on account of his disabilities described above. These personally encountered architectural barriers are more fully documented in Addendum A. *As a matter of clarification, these barriers were not noted online, but in person.* (Emphasis added) |

---

[1] However, the Ninth Circuit allows contradictory allegations in an amended pleading when deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *See PAE Gov't Servs., Inc. v. MPRI, Inc.,* 514 F.3d 856, 860 (9th Cir. 2007), subject to sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent powers.

| | |
|---|---|
| 34. Thereafter, Plaintiff became aware that Defendant's 1st party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully disclosed in Addendum A. | |
| 3. Plaintiff is a *single* man currently residing in Maricopa County, Arizona. | 24. Plaintiff intends to travel to the Disneyland area *with Mrs. Strojnik* and our grandchildren and intends to stay at the Defendant's hotel at such time as the Hotel is fully and completely ADA compliant. |

The Court should note that the Addendum A, which Strojnik alleges contains the architectural barriers that he viewed on 1st and 3rd party websites is identical to the Addendum A that he claims to have personally experienced "on or about March 14-15." Given that Strojnik has already admitted in his Complaint that the Addendum A comes from his review of websites, it is implausible if not an outright sham that some of these "website captures" now represent barriers that he *personally* viewed "on or about March 14-15."

Furthermore, in his declaration filed in Opposition to Defendant's earlier Motion to Dismiss, Strojnik failed to mention that he allegedly visited the Doubletree – despite the fact that the main thrust of the Motion was that he merely viewed websites from Arizona before filing suit. Strojnik has been disbarred for fraud and misrepresentation to numerous courts in connection with his ADA claims, so it should be no surprise that he is shamelessly making allegations which are at best implausible, if not outright fraudulent.

## II.
## STROJNIK STILL LACKS STANDING OR FAILS TO STATE A CLAIM UNDER THE ADA

"Federal courts are required sua sponte to examine jurisdictional issues such as standing." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002); *United States v. Hays*, 515 U.S. 737, 742 (1995); *Strojnik v. Pasadena Robles Acquisition,*

*LLC*, Case No. 2:19-CV-02067-AB (PJWx) (C.D.Cal. August 14, 2019)(dismissing complaint without leave to amend for lack of standing). A copy of that recent decision is attached to the Stillman Decl. as <u>Exhibit 2.</u>

A.    <u>The FAC Still Fails To Establish Standing Under The ADA</u>

A disabled person claiming access discrimination in violation of the ADA must establish Article III standing in order to maintain their lawsuit. *Chapman v. Pier 1 Imports, Inc.,* 631 F.3d 939, 946 (9th Cir. 2011). Article III standing requires that a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, _U.S._, p 8, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiff has the burden of establishing the existence of these three elements, and must clearly allege facts demonstrating each element. *Id*. Because its jurisdiction is limited, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989)(citing *Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)).

B.    <u>Strojnik Has No Standing To Sue Based On The Contents Of Third Party Booking Sites.</u>

In his Complaint, ¶¶ 15-19, Strojnik alleges that third party booking websites failed to have sufficient information concerning the availability of mobility accessible rooms at Defendant's hotel. However, "To the extent a hotel or other place of lodging makes available such rooms and information to a third-party reservation provider, but the third party fails to provide the information or rooms to people with disabilities in accordance with this section, the hotel or other place of lodging will not be responsible." 28 Code Fed. Reg. § Part 36, Appendix A. Since Defendant made available ADA-accessible rooms and information to third-party reservation providers, Defendant is not liable for the failure of those websites to include the relevant information. Since Strojnik's standing was based on his review of third party booking sites, he lacks standing to assert any claim based on any

1    alleged deficiency in the contents of those third party websites.

2    C.    <u>Strojnik Cannot Show An Injury In Fact.</u>

3        An "injury in fact" must be "concrete and particularized" and "actual or imminent,"

4    not conjectural or hypothetical. *Lujan*, 504 U.S. at 560. This includes a "requirement that a

5    party seeking review must allege facts showing that he is himself adversely affected."

6    *Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972). The

7    "injury in fact" element is met when a disabled plaintiff has *personally* encountered a

8    barrier violating the ADA, based on his specific disability. *Chapman*, 631 F.3d at 947

9    (citing *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 (9th Cir. 2008)).  Plaintiff contends

10   that he experienced alleged barriers by looking at third party websites and then purportedly

11   visiting the Doubletree hotel.

12       1.    **Strojnik Encountered No Barrier To The Use Of Defendant's Facilities.**

13           a.    *Strojnik Encountered No Cognizable Barriers When Viewing Websites.*

14       In his First Cause of Action, Plaintiff merely alleges that when he went to reserve an

15   ADA-accessible room, he reviewed *pictures* on a website. FAC, ¶¶ 31-37.  He does not

16   allege that he was *unable* to reserve such a room or even that one was unavailable.  *Id.*  "To

17   survive a motion to dismiss, Plaintiff must claim an actual (not hypothetical) impediment to

18   the use of Defendant's retail location." *Gomez v. Bang & Olufsen Am., Inc.*, 2017 U.S. Dist.

19   LEXIS 15457, *12-13 (S.D. Fla. Feb. 2, 2017)(website did not impede use of physical

20   facilities).

21       Viewing a website from afar, without even an attempt or a bona fide interest in

22   reserving a room is not "experiencing a barrier" that would give a plaintiff standing to sue a

23   *hotel* that the plaintiff never visited nor intended to visit.  "However, it is not clear

24   that not being able to determine a hotel's accessibility features from a website equates

25   to encountering or becoming aware of actual access barriers." *Strojnik v. Pasadena Robles*

26   *Acquisition, LLC*, Case No. 2:19-CV-02067-AB (PJWx) (C.D.Cal. August 14, 2019)

27   (dismissing complaint without leave to amend for lack of standing), at n.1.

28           b.    *Strojnik Does not Identify Architectural Barriers He Actually*

1

*Experienced During His Purported "Visit."*

Plaintiff next claims that he purportedly visited the Doubletree "on or about March 14-15" and personally experienced barriers. FAC, ¶ 38. Plaintiff cannot merely identify barriers not associated with his particular disability to satisfy Article III standing. See *Chapman*, 631 F.3d at 947. A barrier in a public accommodation must "interfere with the plaintiff's full and equal enjoyment of the facility." *Id.* A barrier, however, will "only amount to such interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability." *Id.* A "bare procedural violation," divorced from any concrete harm, cannot satisfy the demands of Article III standing. *Spokeo, Inc. v. Robbins*, __ U.S. __,136 S. Ct. 1540, 1550 (2016).

Here, Plaintiff includes the same photographs of alleged barriers at the DoubleTree Hotel as he did in his complaint. See Addendum A. Each photograph is accompanied by the uniform caption: the barrier "denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meet his accessibility needs." *Id.* Although in an effort to comply with this Court's Order dismissing the complaint, for each photograph that in the complaint he alleged that he experienced online, Strojnik has added that "The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel: On or about March 14-15, 2019." Strojnik does not explain how any of those photographs relate to his disability. This is insufficient under *Chapman*, 631 F.3d at 954.

The Court should also note that Plaintiff does not explain exactly how anything depicted in any of the photographs at Addendum A affect his ability to use the hotel. In fact, although Strojnik is cagey on this point with his laundry list of medical problems in FAC, ¶ 3, no where in his complaint does he claim to use a wheelchair and thus cannot complain of any of the alleged barriers that would apply to disabled people in wheelchairs, such as counter heights, disabled parking or width of aisles. Nor does he allege that he has a disability placard that would permit him to park in disabled parking spaces, or any kind of

evidence that would tend to show that he requires a wheelchair.  In fact, in a video clip from a March 7, 2018 news report that aired on the ABC Phoenix affiliate, Channel 15, Strojnik is clearly shown strolling without any type of assistance whatsoever. https://www.abc15.com/news/local-news/investigations/state-bar-moves-to-suspend-serial-suing-attorney-exposed-by-abc15.  Strojnik claims to suffer from "neural foraminal stenosis," which refers to the narrowing of the small openings between each vertebra in the spine.[2]  Yet, in another video clip from ABC 15 aired June 25, 2018, Strojnik is shown walking and in court with a large litigation briefcase slung over his shoulder – hardly consistent with his claim that his "foraminal stenosis" prevents him from "major life activities.  *See* https://www.abc15.com/news/local-news/investigations/az-attorney-general-attempts-second-intervention-to-shut-down-serial-suing-attorney.  In addition, his email signature contains

_____

    [2]  Merely having an impairment does not make one disabled for ADA purposes. *Toyota Motor Mfg. Ky. v. Williams*, 534 U.S. 184, 195, 151 L. Ed. 2d 615, 122 S. Ct. 681 (2002). To qualify as having an actual disability, a claimant must show that their impairment limits a major life activity. *Id.* The limitation on a major life activity must be "substantial." In *Toyota*, the Supreme Court found that these terms need to be interpreted strictly to "create a demanding standard for qualifying as disabled." *Id. Toyota* limited the ADA analysis to include only those impairments that prevent or severely restrict an individual from doing activities that are of central importance to most people's daily lives. *Id.* at 198.  For example, in *Chanda v Engelhard/ICC* 234 F3d 1219 (11th Cir. 2000), although an engineer who had tendinitis had physical impairment, where engineer acknowledged that he could dress and feed himself, do household chores, drive, write, and use computer, he was not disabled. *See also*, *Rossbach v City of Miami* 371 F3d 1354 (11th Cir. 2004) (officers claimed that his impairment prevented him from standing, sitting, walking or sleeping for extended periods of time, all testimony was couched in vague terms and was unaccompanied by any evidence that such afflictions were any worse than those suffered by many adults).  Here, Strojnik's physical woes are either not relevant to the case (such as having had prostate cancer) or do not limit his abilities to drive hundreds of miles from Phoenix, AZ, and allegedly stay in 17 different cities in California over six months. FAC, ¶ 25.

a picture of him standing on a small boat holding a fish – again inconsistent with any claimed difficulty in standing or walking.  See Stillman Decl., ¶ 4.

Furthermore, his FAC alleges that he regularly drives from Phoenix, Arizona all over California as well, which at least raises an inference that his purportedly "agonizing" pain does *not* interfere with his sitting in a car for hours at a time. FAC, ¶ 26. Thus, there is no alleged disability that Strojnik can even tie to any alleged barrier.

Finally, even assuming that Strojnik was legitimately wheelchair-bound – which he is clearly not – the things that Strojnik claims to require of a hotel in his FAC, ¶ 8 are all present at the Doubletree.  Declaration of Christopher Neilson, ¶ 10. Thus, Strojnik cannot show that he experienced *any* barriers at the Doubletree.

> ### 2.  Defendant's Website Does Not Interfere With Strojnik's *Actual* Enjoyment Of The Hotel.

In order to state a discrimination claim under Title III, a plaintiff must show among other things, that "the plaintiff was denied a public accommodation by the defendant because of his disability." *Ariz. ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9ᵗʰ Cir. 2010).  Where a plaintiff claims that a website violates the ADA, he must allege that an allegedly noncompliant website hindered his full use and enjoyment of the physical location.  *Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1321 (S.D. Fla. 2002) (granting defendant's motion to dismiss because plaintiff failed to establish a nexus between southwest.com and any restriction on the full enjoyment of a physical, concrete place of public accommodation).  "[T]he majority of courts agree that websites are not covered by the ADA unless some function on the website hinders the full use and enjoyment of a physical space." *Gomez*, 2017 U.S. Dist. LEXIS 15457, *6-9 (S.D. Fla. Feb. 2, 2017).

> All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment *of the brick-and-mortar store*. To survive a motion to dismiss, Plaintiff must claim an actual (not hypothetical) impediment to the use of Defendant's retail location.

*Gomez*, 2017 U.S. Dist. LEXIS 15457, *12-13 (S.D. Fla. Feb. 2, 2017) (emphasis added).

1    In another similar case, *Haynes v. Genesco, Inc.*, 2018 U.S. Dist. LEXIS 5939, at *5

2    (S.D. Fla. Jan. 11, 2018), the plaintiff contended that the website itself is a public

3    accommodation and an extension of Defendant's stores. "Plaintiff does not, however, allege

4    that the partially-inaccessible website impedes his access to Defendant's physical stores. In

5    the absence of such allegations, Plaintiff has failed to state a violation of Title III." *Id.*

6    Similarly, in this case, Strojnik does not allege that he was prevented from using the

7    Defendant's hotel because he allegedly was unable to reserve an ADA-compliant hotel

8    room.  He only claims that there was *insufficient information* on the websites to determine

9    whether to stay at the hotel.[3]  FAC, ¶ 31-37.  Insufficient information to enable Strojnik to

10   determine *whether or not* to stay at the Doubletree is substantively different from being

11   unable to enjoy the goods and services of the hotel. *Strojnik v. Pasadena Robles*

12   *Acquisition, LLC*, Case No. 2:19-CV-02067-AB (PJWx) (C.D.Cal. August 14, 2019), at

13   n.1.

14   Strojnik was perfectly free to call the hotel, email the hotel, speak to a reservations

15   operator or simply arrive at the hotel in person and request an ADA accessible room.  Not

16   having an ADA-compliant hotel room available on the Defendant hotel's website is no

17   impediment to Strojnik's use of the hotel, and his First Cause of Action therefore does not

18   allege a violation of the ADA pursuant to Fed. R. Civ. P. 12(b)(1) based on his viewing

19   websites and therefore fails to allege an injury in fact to establish Article III standing.

20   _____

21      [3]  Unlike what Plaintiff contends, a hotel's website is not a survey on every ADA

22   accessible feature of the hotel, such as positioning of ramps, number of parking spaces,
     counter heights, etc.  DOJ "recognizes that a reservations system is not intended to be an

23   accessibility survey. . . For hotels that were built in compliance with the 1991 Standards

24   [such as the Doubletree], it may be sufficient to specify that the hotel is accessible and, for
     each accessible room, to describe the general type of room (e.g., deluxe executive suite),

25   the size and number of beds (e.g., two queen beds), the type of accessible bathing facility

26   (e.g., roll-in shower)." Appendix A to Part 36—Guidance on Revisions to ADA Regulation
     on Nondiscrimination on the Basis of Disability by Public Accommodations and

27   Commercial Facilities,

28   https://www.ada.gov/regs2010/titleIII_2010/titleIII_2010_regulations.htm#a302

3.   **The DOJ Has Opined That The Regulations Only Require A "Place Of Public Accommodation" To Provide Reasonable Alternatives.**

The DOJ is the agency charged with enforcing Title III and promulgating regulations implementing it. *United States v. AMC Entm't, Inc.*, 245 F.Supp.2d 1094, 1100 (C.D. Cal. 2003).  The DOJ has stated that "covered entities with inaccessible Web sites may comply with the ADA's requirement for access by providing an accessible alternative, such as a staffed telephone line, for individuals to access the information, goods, and services of their Web site." Nondiscrimination on the Basis of Disability, 75 Fed. Reg. at 43466.  *Gorecki v. Dave & Buster's, Inc.*, 2017 U.S. Dist. LEXIS 187208, at *14 (C.D. Cal. Oct. 10, 2017); *see also,* https://www.ada.gov/websites2.htm ("An agency with an inaccessible website may also meet its legal obligations by providing an alternative accessible way for citizens to use the programs or services, such as a staffed telephone information line.").

DOJ's views "are entitled to so-called *Skidmore* deference insofar as they 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Vigil v. Leavitt*, 381 F.3d 826, 835 (9th Cir. 2004) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)); *Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)(an agency's interpretation of its own regulation is entitled to deference).  Interpretations contained in formats such as opinion letters are "entitled to respect" under *Skidmore*, but only to the extent that those interpretations have the "power to persuade." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1663 (2000).  As recently as September 25, 2018, the DOJ wrote a letter to Congress in response to a Congressional inquiry stating that

> Absent the adoption of specific technical requirements for websites through rulemaking, public accommodations have flexibility in how to comply with the ADA's general requirements of nondiscrimination and effective communication. Accordingly, noncompliance with a voluntary technical standard for website accessibility does not necessarily indicate noncompliance with the ADA.

https://www.adatitleiii.com/wp-content/uploads/sites/121/2018/10/DOJ-letter-to-congress.pdf.

Thus, even an inaccessible or only partially accessible website is not a violation of

1   the ADA and its regulations if the defendant has provided an accessible alternative, such as

2   a telephone reservation desk, etc.  *See* 2010 ADAAG, § 103 and Comments (nothing in

3   these requirements prevents the use of designs, products, or technologies as alternatives to

4   those prescribed, provided that the alternatives result in substantially equivalent or greater

5   accessibility and usability). The Doubletree not only provides accessibility information on

6   its website, but it provides a 24/7 reservation line to provide any information about the

7   hotel that any potential guest might require.  Neilson Decl., ¶ 7.  In addition, Plaintiff's

8   First Cause of Action under the ADA based on allegedly inadequate website access

9   therefore fails to establish either standing or a claim.

10  D.    Strojnik Cannot Show That Any Injury Is "Imminent."

11         In order for an ADA plaintiff to allege an injury that is imminent, he must express

12  more than a "vague desire to return" to the accommodation's location. *Summers v. Earth

13  Island Inst.*, 555 U.S. 488, 496, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009).  Absent a "firm

14  intention to visit" the location, the plaintiff has not alleged facts "to satisfy the requirement

15  of imminent injury[.]" *Id.*  In other words, "'some day' intentions—without any description

16  of concrete plans, or indeed even any specification of *when* the some day will be—do not

17  support a finding of the 'actual or imminent' injury that [Supreme Court] cases require."

18  *Brooke v. Choice Hotels Int'l, Inc.*, 2016 U.S. Dist. LEXIS 60062, at pp. 7-8 (S.D. Cal. May

19  5, 2016) citing *Lujan*, 504 U.S. at 564 (emphasis in original). "General statements

20  regarding Plaintiff's intent to travel to an area . . . are insufficient to allege an 'actual and

21  imminent' injury." *Brooke v. Choice Hotels Int'l, Inc.*, 2016 U.S. Dist. LEXIS 60062, at

22  *7-8 (S.D. Cal. May 5, 2016) citing *Summers*, 555 U.S. at 493; When analyzing plaintiff's

23  intent to return to establish an "injury in fact," the Supreme Court has held that the

24  plaintiff's "profession of an intent to return . . . [was] simply not enough" for standing.

25  *Strojnik v. Pasadena Robles Acquisition, LLC*, Case No. 2:19-CV-02067-AB (PJWx)

26  (C.D.Cal. August 14, 2019) citing *Lujan*, 504 U.S. at 564.

27         In the ADA context, courts evaluate the possibility of *future* harm by assessing the

28  likelihood a plaintiff will *again* visit the premises at issue by examining the following

1    factors to determine whether a plaintiff's likelihood of returning to a place of public

2    accommodation is sufficient to confer standing: "(1) the proximity of defendant's business

3    to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the

4    definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near

5    defendant." *Harris v. Del Taco, Inc.*, 396 F. Supp. 2d 1107, 1113 (C.D. Cal. 2005).

6        In this case, Strojnik has strived mightily in the FAC to try to satisfy the "intent to

7    return" prong.  However, he continues to fail.  First, Strojnik lives more than 360 miles

8    from the hotel.  *Pasadena Robles Acquisitions*, *supra*.  If a plaintiff lives more than 100

9    miles from the public accommodation, "the distance subverts a professed intent to return."

10   *Id*. (citing *Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1164 (C.D. Cal. 2005).  Second,

11   although Strojnik claims to have stayed at the Doubletree in the past, he has not.  Neilson

12   Decl., ¶ 3.  Third, as discussed, Stojnik offers no definite plan to return to Defendant's

13   hotel.  His exact allegation that "Plaintiff intends to visit Defendant's Hotel at a specific

14   time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG,"

15   FAC, ¶ 19; "Plaintiff intends to travel to the Disneyland area . . . and intends to stay at the

16   Defendant's hotel at such time as the Hotel is fully and completely ADA compliant, FAC, ¶

17   24; and "Plaintiff has a definite plan to return to the Disneyland area and intends to stay at

18   Defendant's Hotel once the Hotel confirms its ADA compliance (futility)," FAC, ¶ 29, were

19   held to be insufficient as a matter of law to establish standing in *Pasadena Robles*

20   *Acquisitions* (dismissing complaint for lack of standing).

> In addition, the purpose of the "intent to return" road to standing is to show
> that the plaintiff will likely be harmed because barriers 'continue to exist at a
> place of public accommodation to which he intends to return.'" *Chapman*, 631
> F.3d at 953. Here, Plaintiff's intent to return is expressly contingent on the
> hotel coming into compliance with the ADA, thus Plaintiff will not return
> unless the hotel comes into compliance so he will necessarily not encounter
> accessibility barriers at that time. Plaintiff's own intent allegation therefore
> forecloses standing based on the intent to return option.

*Strojnik v. Pasadena Robles Acquisition, LLC*, Case No. 2:19-CV-02067-AB (PJWx)

(C.D.Cal. August 14, 2019), p. 6.

        Additionally, regarding the likelihood of future harm, although Strojnik alleges that

he intends to return to the hotel at some unspecified time in the future, it is again implausible. Since December 2018, Strojnik has filed at least 20 lawsuits with substantially the same allegations in this District alone.  All of these newly-filed lawsuits contain similar essential allegations. In light of the many other hotels being concurrently sued, not identifying *which* of the several hotels he is currently suing in the Central District at which he intends to stay falls far short of the type of evidence sufficient to establish ADA standing. These general "some day" allegations were defective in the complaint and are defective now.

E.    There Is No Causal Connection Between Any Alleged "Injury" And Defendant's Conduct.

A critical element of standing to assert a claim pursuant to the ADA is that a plaintiff must identify access barriers that preclude him from "full and equal enjoyment of the facility on account of his particular disability." *Chapman*, 631 F.3d at 947.  Merely listing ADA violations at the defendant's property "cannot substitute for the factual allegations required in the complaint to satisfy Article III's requirement of an injury-in-fact." *Chapman*, 631 F.3d at 955. A plaintiff must identify "how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return," or "how any of them deter him from visiting the [defendant's facility] due to his disability." *Advocates for Individuals with Disabilities LLC v. WSA Props. LLC*, 210 F. Supp. 3d 1213, 1221-22 (D. Ariz. 2016).

As in the complaint, Plaintiff fails to satisfy the "injury in fact" requirement in the FAC because Plaintiff does not relate the alleged ADA barriers to his particular disability. Nor does Plaintiff allege how his alleged injury – alleged "spinal stenosis" was related in any way to any ADA-accessible room features required to accommodate *his own* disability. Therefore, Plaintiff cannot establish a "concrete and particularized injury" or "a real and immediate threat of future injury." *Zimmerman v. GJS Grp.*, 2018 U.S. Dist. LEXIS 148816, at *15-16 (D. Nev. Aug. 30, 2018).

The closest that Strojnik gets to explaining what any of the alleged architectural

barriers that he purportedly experienced have to do with his disability is in the FAC, ¶ 38, where he alleges that "he personally encountered architectural barriers to accessibility which interfered with his full and equal enjoyment of the facility on account of his disabilities described above" and FAC, ¶ 39, where he alleges that "The architectural barriers interfere with Plaintiff's full and equal enjoyment of Defendant's Hotel because they make it more difficult for Plaintiff to enjoy Hotels amenities than for a non-disabled individual." Those were inadequate in the complaint, are inadequate in the FAC and fall far short of this Court's ruling that Strojnik "must do more than merely identify barriers that he encountered—he must plead how each barrier affected him because of his disability."

*Zimmerman v. GJS Grp.*, 2018 U.S. Dist. LEXIS 148816 (D. Nev. Aug. 30, 2018) is closely on point. In that case, as in Strojnik's complaint here, the plaintiff's Complaint listed accessibility barriers without any corresponding facts connecting the alleged barriers to his disability. As in *Chapman*, a plaintiff "does not even attempt to relate the alleged violations to his disability." 631 F.3d at 955. In *Zimmerman*, as here,

> For example, in several Complaints, Plaintiff alleges a '[f]ailure to provide the clear width surface aisles and pathways no less than 36 inches' and '[f]ailure to provide signs containing the designation 'van accessible' that identify van parking spaces.' Despite initially identifying these alleged access barriers, Plaintiff fails to state how, or whether, the alleged barriers affected Plaintiff 'on account of his particular disability.' *Chapman*, 631 F.3d at 947 (emphasis added).

*Id.* at 16-17. Similarly, Strojnik makes a laundry list of information absent from the Defendants's website without even tying in any of those alleged ADA violations to his specific needs. He does not, for example, ever claim that he uses a wheelchair. In fact, the closest that he gets to alleging any causal relationship between his disability and any purported barriers is where he alleges that "Plaintiff walks with difficulty and pain and requires compliant mobility accessible features at places of public accommodation." FAC, ¶ 4. The complaint is devoid of any explanation of how his walking with difficulty and pain" requires any sort of ADA-accessible feature that was allegedly lacking. Therefore, room clearances that might be required for wheelchair access are not true barriers *to him*. Accordingly, his injury is not causally related to Defendant's website at all

1    and he cannot establish the second element of standing.

2    F.    Plaintiff Lacks Standing To Claim Injunctive Relief.

3         "To establish standing to pursue injunctive relief under the ADA, a plaintiff must

4    also "demonstrate a 'real and immediate threat of repeated injury' in the future." *Brooke v.*

5    *H&K P'ship*, 2016 U.S. Dist. LEXIS 148572, at 5 (E.D. Cal. Oct. 26, 2016) citing

6    *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). Here, Strojnik

7    has filed 20 lawsuits from Arizona against businesses and hotels in the Central District, all

8    claiming that he intends to return to each of the businesses. As one court stated in referring

9    to cases filed by Strojnik's son (also named Peter Strojnik), "This sort of

10   litigation-by-the-truckload is transparently designed to extract settlements, not advance

11   worthy ADA goals, and the Court is wary of encouraging such an approach. *Brooke v.*

12   *Newport Hotel Holding LLC*, 2016 U.S. Dist. LEXIS 187101, at *9 (C.D. Cal. Apr. 29,

13   2016). The allegation that Strojnik intends to actually return to each of the hotels that he

14   has sued in this district is simply implausible and Strojnik should be required to plead

15   specifically why he will be staying at each of the many hotels that he has sued, if only the

16   alleged barriers were removed. Barring such specificity, Plaintiff cannot demonstrate a

17   "real and immediate threat of repeated injury" in the future and is not entitled to injunctive

18   relief.

19                                              **III.**
     **STROJNIK STILL LACKS STANDING PURSUANT TO CALIFORNIA'S UNRUH**
20   **ACT TO BRING HIS SECOND AND THIRD CAUSES OF ACTION**

21        This Court gave Strojnik leave to amend his Unruh Act claims, noting specifically

22   that the Unruh Act has no extraterritorial reach. In the FAC, Strojnik has apparently

23   abandoned his claim that Defendant's website violated the Unruh Act, opting instead to

24   claim that he personally experienced alleged architectural barriers "on or about March 14-

25   15."[4]  *See* FAC, ¶ 47 ("Plaintiff personally experienced architectural barriers to accessibility

26

27   _____

28        [4]  To the extent that Strojnik is still claiming that Doubletree's website violates the
     Unruh Act, that contention is not only not pled in the Second or Third Causes of Action,

as alleged under heading "Personal Barrier Encounters" in Addendum A"). However, Plaintiff still has not pled standing to pursue an Unruh Act claim.

The standing required to pursue monetary relief under the Unruh Act is different from standing to seek injunctive relief under federal or state law. *Reycraft v. Lee*, 177 Cal. App. 4th 1211 (2009).  The Unruh Act restricts damages recovery to situations where "the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." *Rodriguez v. Barrita, Inc.*, 10 F.Supp. 3d 1062, 1076 (N.D. Cal. 2014).  Unlike the ADA, these statutes require "something more than mere awareness of or a reasonable belief about the existence of a discriminatory condition." *Id.*  Standing under the Unruh Act is established where a disabled plaintiff can show he or he actually presented himself or herself to a business or public place with the intent of purchasing its products or utilizing its services in the manner in which those products and/or services are typically offered to the public and was actually denied equal access on a particular occasion.  *Reycraft*, 177 Cal. App. 4th at 1224.   Thus, Strojnik must demonstrate that he *actually presented himself* to the defendant's hotel and was denied access.  However, although Strojnik now alleges that he went to the hotel, he fails to explain how any architectural barriers actually denied him equal access to the hotel.

For example, a plaintiff cannot recover damages unless the violation *actually* denied him or her equal access to some public facility. *Urhausen v. Longs Drug Stores Cal., Inc.*, 155 Cal. App. 4th 254, 265-66 (2007). In *Urhausen*, the court rejected the plaintiff's attempt to equate a "denial of equal access" with the presence of a violation of federal or state regulations.  As the court held, under that theory,

> any disabled person could sue for statutory damages whenever he or he encountered noncompliant facilities, regardless of whether that lack of

---

but it is barred as the Unruh Act has no extraterritorial application, as this Court previously held in its Order dismissing the Unruh Act claims.  Strojnik still does not claim that he viewed the Doubletree's website from anywhere *but* his home in Arizona.

compliance actually impaired the plaintiff's access to those facilities. Plaintiff's argument would thereby eliminate any distinction between a cause of action for equitable relief under section 55 and a cause of action for damages under section 54.3 . . .

*Id.*

In Strojnik's Second and Third Causes of Action, Strojnik cannot allege that he was actually denied access to the Doubletree hotel. Although he alleges that he experienced architectural barriers, he fails to explain how those alleged "barriers" impaired his ability to access the hotel. In fact, the most that Strojnik alleges in another part of the FAC is that he looked at the availability of ADA- accessible rooms online, but did not even attempt to reserve one – which clearly insufficient. *Id.* For example, he does not allege that he attempted to call the hotel, email the hotel, or any number of easily accessible alternatives to access Defendant's facilities, nor does he plausibly allege that he was actually attempting to patronize Defendant along with the other hotels that he has sued in the Los Angeles area at the same time, for the same purported visit. "[T]he cases interpreting the Act have consistently held that an individual plaintiff has standing to bring claims thereunder only if he or he has been the victim of the defendant's discriminatory act." *Surrey v. TrueBeginnings, LLC* (2008) 168 Cal. App. 4th 414, 419.

**IV**.

<u>**STROJNIK DOES NOT HAVE A SEPARATE CLAIM UNDER THE UNRUH ACT FOR THE IDENTICAL CONDUCT THAT IS THE BASIS OF STROJNIK'S DISABLED PERSONS ACT CLAIM**</u>

Strojnik alleges what would be either a violation of the Unruh Act, Civil Code § 51, or, for the same conduct, a violation of the more specific part of the Unruh Act commonly known as the Disabled Persons Act, Civil Code § 54 *et seq*. ("DPA").[5]

---

[5] California intermediate appellate courts are in conflict on this point. *Johnson v. B5596*, 2011 Cal.App.Unpub. LEXIS 8219 (Oct. 27, 2011) (plaintiff only entitled to damages pursuant to DPA). *But see*, *Flowers v. Prasad*, 238 Cal. App.4th 930 (2015)(harmonizing Unruh and DPA). Although this Court is not bound by California intermediate appellate decisions, *Johnson*, which relies on widely accepted principles of statutory construction, is the better reasoned decision.

While the Unruh Act provides broad civil rights protection in housing and business establishments to individuals in all protected classifications, the DPA is more narrowly tailored to "guarantee individuals with disabilities equal access to public places . . . and services, as well as . . . housing and places of public accommodation." *Munson v. Del Taco, Inc.,* 46 Cal.4th at 674 (2009), n. 8.  The DPA similarly "specifies remedies for violations of these guarantees . . . ." *Id.*  "Recognizing the overlap between the Unruh Civil Rights Act and the Disabled Persons Act, the Legislature expressly foreclosed double recovery." *Jankey v. Lee*, 55 Cal.4th 1038, 1045, 150 Cal. Rptr. 3d 191, 290 P.3d 187 (2012); Civil Code § 54.3(c).

Well-established principles of statutory interpretation establish that the DPA, and not the general Unruh Act applies.  A specific statutory provision controls over a more general one. *Salazar v. Eastin,* 9 Cal.4th 836, 857 (1995). "That rule obtains even though the general provision standing alone is sufficiently broad to include the subject to which the statute relates." *Schelb v. Stein* 190 Cal.App.4th 1440, 1448 (2010).  This interpretation of the statutory scheme makes logical sense, as there is no reason that the Legislature would provide a $1,000 statutory penalty *or* a $4,000 statutory penalty *for the same act*. Obviously, any plaintiff would seek the larger $4,000 statutory penalty rather than the $1,000 one.  By foreclosing a double recovery, the reasonable interpretation is that the more specific DPA remedy applies. *Johnson v. B5596*, 2011 Cal.App.Unpub. LEXIS 8219 (Oct. 27, 2011).  Since Strojnik's claims fall within the specific provisions of the DPA, his Second Cause of Action under the Unruh Act should be dismissed.

## V.
## PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED FOR FAILING TO STATE A CLAIM

Strojnik's Negligence cause of action is identical to his Fourth Cause of Action in the complaint that was dismissed.  It should now be dismissed with prejudice.  The essential elements of a negligence claim are that: (1) the defendant was negligent; (2) the plaintiff was harmed; and (3) the defendant's negligence was a substantial factor in causing plaintiff's harm. California Civil Jury Instructions ("CACI") 400.  Although Plaintiff does

1  not identify his negligence cause of action as "negligence per se," the allegations of

2  negligence are based solely on the alleged violations of the ADA and/or Unruh Act.

3      The negligence per se presumption, however, operates only to establish a lack of due

4  care. "The presumption of negligence created by Evidence Code § 669 concerns the

5  standard of care, rather than the duty of care." *Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th

6  949, 958-59 (2007).  "[A]n underlying claim of ordinary negligence must be viable before

7  the presumption of negligence of Evidence Code section 669 can be employed. … '[I]t is

8  the tort of negligence, and not the violation of the statute itself, which entitles a plaintiff to

9  recover civil damages. …'" *Id.* citing *California Service Station etc. Assn. v. American*

10 *Home Assurance Co.* 62 Cal.App.4th 1166, 1178 (1998).

11 A.    <u>There Is No Viable Negligence Claim.</u>

12     Strojnik does not allege any violation of a duty of care that was a substantial factor in

13 causing Plaintiff's harm.  Strojnik only alleges that "Defendant had a duty to Plaintiff to

14 remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full

15 and equal access to the public accommodation."  Complaint, ¶ 61, and that "Defendant

16 breached this duty." Complaint, ¶62.  However, the violation of a statute is only evidence

17 of the standard of care, not the *duty* of care.  Strojnik must first allege that there was a duty

18 of care that was breached to state a viable negligence claim.

19     Second, Strojnik repeatedly alleges that the Defendant's conduct in failing to remove

20 (nonexistent) "ADA accessibility barriers" was "knowing and intentional."  FAC, ¶¶ 64, 66,

21 68,70, 72, 74, 76, 78.  Intentional conduct cannot support a claim of negligence.  *United*

22 *States ex rel. Knapp v. Calibre Sys.,* 2011 U.S. Dist. LEXIS 119589 at *14 (C.D.Cal. Oct.

23 17, 2011); *Monaghan v. El Dorado Cnty. Water Agency*, 2012 U.S. Dist. LEXIS 14900 at

24 *26 (E.D.Cal. Feb. 6, 2012).

25     Third, Strojnik cannot demonstrate that he has personally suffered any harm from the

26 alleged failure to remove any hypothetical barriers *because he never identified how any*

27 *barrier injured him* <u>and</u> never even tried to rent a room.  Therefore, he is no more than a

28 stranger in another state to whom this Defendant owes *no* duty of care, and who could not

1  have suffered any harm.

2  B.  <u>Negligence Cannot Be Based On The ADA.</u>

3      Even assuming that Strojnik had stated a negligence claim, the ADA does not

4  establish the applicable standard of care.  "Whether a particular statute, administrative

5  regulation or local ordinance is utilized to define the standard of care in a negligence action

6  is clearly a question of law to be determined exclusively by the court." *Westbrook v. DTG*

7  *Operations, Inc.*, 2007 U.S. Dist. LEXIS 14653, at *18-19 (D. Nev. Feb. 28, 2007).  Under

8  either the ADA or the Unruh Act, there are no accessibility guidelines that if not met are

9  per se unreasonable or that constitutes a per se barrier under the ADA Guidelines.  *Guerra*

10 *v. W. L.A. Coll.*, 2018 U.S. Dist. LEXIS 141029, at *19-20 (C.D. Cal. Aug. 20, 2018).  The

11 ADA does not fall under the class of statutes that serve as a predicate for negligence per se.

12 *Westbrook v. DTG Operations, Inc.*, 2007 U.S. Dist. LEXIS 14653, at *18-19 (D. Nev. Feb.

13 28, 2007)(applying Nevada law); *Scarborough v. Brown Group, Inc.*, 935 F. Supp. 954,

14 964 (W.D. Tenn. 1995)(finding that Title VII is not the type of law encompassed under

15 negligence per se because such claims may be supported only by statutes and regulations

16 relating to public safety, such as health regulations and rules of the road.).

17     As the Court held in *Estate of Saylor*, 54 F.Supp.3d 409 (D. Md. 2014), negligence

18 cannot be based on a breach of the ADA because, for a breach of a statute to be evidence of

19 negligence, the statute typically must pertain to public safety or health, whereas the ADA is

20 an anti-discrimination statute. Similarly in *White v. NCL America, Inc.*, 2006 WL 1042548

21 (S.D. Fla. 2006), the Court held that "[b]ecause the ADA was not designed to protect those

22 with disabilities from personal injuries, Plaintiff is unable to state a claim for negligence

23 per se." Transforming ordinary ADA claims into negligence claims would be inappropriate

24 expansion of ADA law. As the court held in *Urhausen v. Longs Drug Stores Cal., Inc.*, 155

25 Cal. App. 4th 254, 267 (2007), rejecting the application of negligence per se:

26     Although there was no dispute, at least on the motions for judgment on the
       pleadings, that the disabled accessible parking space did not satisfy applicable
27     slope regulations, "[n]ot every infraction of a statute will result in civil
       liability." (*Nunneley v. Edgar Hotel* (1950) 36 Cal.2d 493, 497 [225 P.2d 497].

28

1    In light of Plaintiff's failure to establish that Defendant has denied him access to

2    Defendant's facilities or that he even has a viable "architectural accessibility" claim

3    pursuant to the ADA, the Fourth Cause of Action should be dismissed *with* prejudice.

4    *Guerra v. W. L.A. Coll.*, 2018 U.S. Dist. LEXIS 141029, at *34-35 (C.D. Cal. Aug. 20,

5    2018).

6                                              **VI.**

7    **THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION**

8    Regardless of whether this Court dismisses Plaintiff's federal claims, this court

9    should decline to exercise supplemental jurisdiction over the state law claims. Once the

10   court acquires supplemental jurisdiction over a state law claim, the court may decline to

11   exercise jurisdiction on account of one of the bases under 28 U.S.C. § 1367(c). *Exec.*

12   *Software N. Am., Inc. v. Jensen*, 24 F.3d 1545, 1551 (9th Cir. 1994). Under section 1367(c),

13   a district court may decline to exercise supplemental jurisdiction under subsection (a) if: (1)

14   the claim raises a novel or complex issue of state law; (2) the claim substantially

15   predominates over the claim or claims which the district court has original jurisdiction; (3)

16   the district court has dismissed all claims over which it has original jurisdiction; or (4) there

17   are compelling reasons for declining jurisdiction in exceptional circumstances.  Exceptional

18   circumstances are present here, as Plaintiff is forum shopping his Unruh Act claim into

19   federal court to avoid the pleading requirements of California state court.  For that reason,

20   this Court should decline supplemental jurisdiction in similar fashion as Judge Bashant in

21   *Schutza v. Cuddeback*, 262 F.Supp.3d 1025 (S.D. Cal. 2017) and *Schutza v. Lamden*, 2018

22   U.S. Dist. LEXIS 157396, at *9 (S.D. Cal. Sep. 14, 2018).

23   As in *Cuddeback* and *Schutza*, the Unruh Act money damages in this case

24   substantially predominate over federal injunctive relief. *Cuddeback*, 262 F.Supp.3d at 1030.

25   Plaintiff's allegations indicate his predominant focus is recovery of money damages under

26   the Unruh Act. Thus, plaintiff's Unruh Act claim substantially predominates over his ADA

27   claim.

28   Moreover, *Cuddeback* shed light on a compelling reason this Court should decline

supplemental jurisdiction—forum shopping. In California state court, an Unruh Act claim, like plaintiff's here, is subject to a heightened pleading standard in which his complaint must be verified and allegations must be specific. *See* Cal. Code Civ. P. § 425.50. This heightened standard acts as a barrier to baseless and vexatious litigation. *Schutza*, citing SB 1186, Chapter 383 § 24 (Ca. 2012). A high frequency litigant must also pay a $1,000 fee when filing a case in state court.  As in *Schutza*, Strojnik has filed scores of cases in federal court alleging disability discrimination.  The same injunctive relief is available in both state and federal courts.  For that reason, the distinct advantages plaintiff gains by bringing his Unruh Act claim in federal court is skirting the state-imposed pleading requirements and a lower burden of proof to recover money damages. Similar to *Cuddeback*, "it would be improper to allow Plaintiff to use federal court as an end-around to California's pleading requirements." *Cuddeback*, 262 F.Supp.3d at 1031.  In both *Cuddeback* and *Schutza*, the Court agreed that the plaintiff was engaging in forum-shopping by bringing his Unruh Act claim in federal court. As such, both courts held that the discouragement of forum-shopping is a compelling reason to decline supplemental jurisdiction over plaintiff's Unruh claim. *Org. for the Advancement of Minorities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1132 (S.D. Cal. 2005).

Therefore, as a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims, the Court should decline supplemental jurisdiction over Plaintiff's Unruh Act claim. *Cuddeback*, 262 F. Supp. 3d at 1031; *Cross v. Pac. Coast Plaza Invs., L.P.*, 2007 U.S. Dist. LEXIS 16138 at *5 (S.D. Cal. Mar. 6, 2007) (declining to exercise supplemental jurisdiction over plaintiff's Unruh Act claims in the interest of comity"); *Hitching Post I Rest.*, 2005 U.S. Dist. LEXIS 39959 at *8-9 (finding comity to be a compelling reason for declining supplemental jurisdiction over state claims).

## VII.
## COLLATERAL ESTOPPEL SHOULD BAR THE CLAIMS HERE

"Collateral estoppel precludes relitigation of issues actually litigated and necessarily determined by a court." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518 (9th Cir. 1985).

Collateral estoppel is appropriate when the following elements are met: "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000).

As shown by Strojnik's complaint in *Pasadena Robles Acquisitions*, Strojnik made the identical claims there as he has done in this case. Final judgment was entered against Strojnik by the Order dismissing his complaint without leave to amend, which order is attached to the Stillman Decl. as <u>Exhibit 2</u>. Thus, Strojnik's lack of standing against the hotel in that case has been finally determined against Strojnik on virtually the identical allegations and for the same reasons, should bar the complaint here as well.

## CONCLUSION

For the foregoing reasons, Defendant requests that this Court grant its Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) with prejudice and without leave to amend.

Respectfully Submitted,

STILLMAN & ASSOCIATES

Dated: September 20, 2019            By:_____
                                    Philip H. Stillman, Esq.
                                    Attorneys for defendant ORANGEWOOD, LLC

**PROOF OF SERVICE**

I, the undersigned, certify under penalty of perjury that on September 22, 2019 or as soon as possible thereafter, copies of the foregoing Motion to Dismiss, Memorandum of Points and Authorities Declaration of Philip H. Stillman, Declaration of Christopher Neilson and Proposed Order was served electronically by the Court's ECF notice to all persons/entities requesting special notice or otherwise entitled to the same and via email to Plaintiff's email address listed with this Court.


By: */s/ Philip H. Stillman*
Attorneys for ORANGEWOOD, LLC