Peter Strojnik (Sr.),
2375 East Camelback Road Suite 600
Phoenix, Arizona 85016
Telephone: (602) 524-6602
ps@strojnik.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
|  | Case No: 8:19-cv-0946-DSF-GJSx |
| PETER STROJNIK (SR.), | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (Doc 27)** |
| Plaintiff, |  |
| vs. |  |
| ORANGEWOOD LLC. DBA DOUBLETREE SUITES BY HILTON HOTEL ANAHEIM RESORT – CONVENTION CENTER |  |
| Defendant. |  |

## INTRODUCTION

Defendant filed its first Motion to Dismiss on June 28, 2019. Doc. 9. The Court granted Defendant's Motion with leave to amend. Doc. 18. In it, the Court delineated the deficiencies in the original Complaint and provided clear guidance for filing First Amended Complaint (FAC) on August 28, 2019. Doc. 19.

FAC is the result of faithful and thorough review of the Court's Order granting leave to amend. It is further a faithful and complete adherence to the 9th Circuit Court of Appeals decision in *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093 (9th Cir. 2017) ("CREEC").

///

///

**DEFENDANTS RENEWED MOTION TO DISMISS**

Defendant's Second Motion to Dismiss is a *factual* attack on FAC while the First Motion was a *facial* attack on the original Complaint. Defendant's Second Motion is supported by declarations of Defendant's attorney, Mr. Stillman, and Defendant's manager, Mr. Neilson.

Both Declarations have been inspected with interest. The closest Mr. Stillman's declaration gets to jurisdictional facts is to show a 2015 photo of Plaintiff in a fishing boat, commenting "[t]his seems to indicate that despite his purported health concerns, they do not affect his recreational activities". Mr. Stillman's concern with Plaintiff's prostate cancer, renal cancer, foraminal stenosis with symptoms of femoral neuropathy and right knee prosthesis are more fully addressed in the Declaration of Peter Strojnik, Exhibit 1 hereto.

Mr. Neilson's declaration is likewise sparse of any jurisdictional facts although it is awash with denials of liability. However, Mr. Neilson's Declarations at ¶3 (relating to Plaintiff's stay at Doubletree in the past), ¶4 (relating to membership in Hilton Honors), ¶5 (relating to premium charges for accessible rooms, ¶8 (relating to Defendant's alleged compliance with ADAAG), ¶9 (relating to architectural barriers documented by photography), ¶10 (relating to Plaintiff's need for compliance with the ADA) and ¶16 (relating to pricing) are objectively false. His Declarations in ¶¶11 (relating to 28 CFR 36.301) is legally wrong. Mr. Neilson's declarations at ¶¶12 and 14 admit that the Hotel violates the dispersion requirement of the 2010 Standards.

Defendant's Motion is bereft of any jurisdictional facts. Both Declarations are more fully critiqued and factually corrected in the Declaration of Peter Strojnik, Exhibit 1 hereto.

**MEMORANDUM**

**I.  DEFENDANT'S QUARREL WITH OBJECTIVELY INDISPUTABLE FACTS IS NOT WELL TAKEN.**

Defendant's lead argument is that there exist contradiction between allegations in the original Complaint and FAC and, therefore, all contradictory allegations must be stricken. Defendant's barney is not founded in fact.

Defendant urges the Court to disregard the facts pleaded in the FAC, as for example, the allegation at ¶¶24 and 38:

> 24. Plaintiff intends to travel to the Disneyland area with Mrs. Strojnik and our grandchildren and intends to stay at the Defendant's hotel at such time as the Hotel is fully and completely ADA compliant.

> \*\*\*

> 38. Plaintiff personally visited Defendant's Hotel on or about March 14-15, 2019, and personally encountered architectural barriers to accessibility which interfered with his  full and equal enjoyment of the facility on account of his disabilities described above. These personally encountered architectural barriers are more fully documented in Addendum A. As a matter of clarification, these barriers were not noted online, but in person.

Defendant's objection to ¶24 seems to be that Plaintiff alleges in ¶3 that he is a "single man". While Plaintiff's traveling partners have no bearing on standing issues, Plaintiff nonetheless addresses Defendant's Concern in ¶31 of his Declaration, stating:

> 31. Defendant makes hay of the fact that Plaintiff is a single man but still travels with Mrs. Strojnik. Plaintiff and Mrs. Strojnik were divorced in December of 2013 but still enjoy traveling together.

Defendant's objection to the fact that Plaintiff personally visited the hotel on March 14, 2019 to discover a multitude of ADA violations, while incomprehensible in light of photographic evidence in Addendum A of the FAC, is also addressed in Exhibit 1 at ¶35 by providing date and time stamped photographs showing that, indeed, Plaintiff visited Defendant's hotel on March 14, 2019.  A sample photograph (1 of 12) with a date and time stamps is reproduced here:



The time stamped photograph shows that as of March 14, 2019 at 17.16.28, the hotel did not have a properly marked passenger loading zone. This is a violation of 2010 Standards for Accessibility Design ¶503 figure 503.3:



Figure 503.3 Passenger Loading Zone Access Aisle

The facts alleged in the FAC are true and correct, and striking them is unwarranted

## II. OBJECTIVELY INDISPUTABLE FACTS DEMONSTRATE ARTICLE III STANDING.

In order to have constitutional standing, Plaintiff must demonstrate that (1) he has suffered an injury-in fact that is both concrete and particularized and actual or imminent; (2) the injury is traceable to the defendant's challenged action; and (3) it is likely that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In ADAcases, courts have been instructed "to take a broad view of constitutional standing . . . especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011)(internal quotation marks and citations omitted). The Ninth Circuit has explained that there are two ways an ADA plaintiff can show a cognizable injury-in-fact: (1) by showing injury-in-fact plus an intent to return to the facility at issue; or (2) showing that he was deterred from visiting the facility because he encountered barriers relating to his disability there. *Id.* at 949.

**1. Alternative ADA standing 1: Injury in fact plus intent to return.**

    **a. Injury in Fact**

In *CREEC*, the Court of Appeals stated, 867 F.3d at 1099:

> A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc). We have dubbed this the "deterrent effect doctrine." *Id.* at 949-50. "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury. . . ." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)). "**So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues.**" *Id.* at 1137. (Emphasis supplied)

Plaintiff has been injured in fact because the discriminatory conditions persist and Plaintiff is aware of them and remains deterred.

### b.  Intent to Return

To flesh out a plaintiff's intent to return, a court may look at the proximity of the facility to the plaintiff's residence, plaintiff's past patronage, plaintiff's concrete plans, and plaintiff's frequency of travel near the facility. *Molski v. Mandarin Touch Restaurant*, 385 F.Supp.2d 1042, 1045 (C.D. Cal. 2005). The standard for determination of the intent to return is *plausibility*. *See  D'Lil v. Best W. Encina Lodge & Suites* , 538 F.3d 1031, 1037, 1040 (9th Cir. 2008) in conjunction with the recent 4th Circuit Court of Appeals decision *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447 (4th Cir., 2017) adopting this Court's *D'Lil's* plausibility standard. The question, then, is whether it is *plausible* for Plaintiff to travel near the facility in the future.

Plaintiff's proximity to Defendant's hotel weighs in favor of Plaintiff since the entire purpose of lodging facilities is to accommodate a traveler *from far away.* Plaintiff's past patronage of Anaheim / Disneyland area is alleged in ¶ 27:

27. Plaintiff travelled and lodged in the Disneyland area at least 20 times in the past with his and Mrs. Strojnik's children and Plaintiff's and Mrs. Strojnik's out of country guests.

Further, Plaintiff's FAC alleges at ¶25:

25. Plaintiff, who is retired, travels to California often, to wit, just in 2019, Plaintiff travelled to California and lodged there as follows:
   a. 2019-01-23 – San Diego
   b. 2019-02-16-17 – Solvang
   c. 2019-03-14-17 – Anaheim
   d. 2019-04-05 – Santa Barbara
   e. 2019-04-06 – Santa Clara
   f. 2019-04-07 – Carmel
   g. 2019-04-16 – Healdsburg
   h. 2019-04-17 – Calistoga
   i. 2019-04-18 – Napa
   j. 2019-05-20 – La Jolla
   k. 2019-05-21 – San Diego
   l. 2019-05-22 – Sorento Valley
   m. 2019-06-05 – Bakersfield
   n. 2019-06-06 – Redding
   o. 2019-06-07 – Sacramento
   p. 2019-06-07 – Fresno and Visalia
   q. 2019-07-25-26 – Coronado

Next, Plaintiff alleges that he has a definite plan to the Disneyland area and intends to stay at Defendant's Hotel once the Hotel confirms its ADA compliance. FAC at ¶29.

Lastly, Plaintiff's Declaration, Exhibit 1, discloses that Plaintiff *actually* returned to the Anaheim area on September 21, 2019 booking a room at the Holiday Express Suites in Santa Ana, merely 8 miles away. This recent travel not only satisfies the *plausibility* of return standard but also confirms the *fact* of return.

### 2. Alternative ADA standing 2: Deterrence.

"[A]n ADA plaintiff who has encountered or has personal knowledge of at least one barrier related to his or her disability when he files a complaint and who has been deterred from attempting to gain access to the public accommodation because of that barrier, has suffered an injury in fact under Article III of the ADA." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008)

Here, deterrence has been accurately and truthfully pled.

///

///

## III. OBJECTIVELY INDISPUTABLE FACTS DEMONSTRATE PLAINTIFF'S DISABILITY AND THE CAUSAL CONNECTION BETWEEN DISABILITY AND ACCESSIBILITY BARRIERS

Plaintiff encountered the alleged ADA violations when he visited the Hotel on March 14, 2019 and took photographs. Strojnik Declaration, Exhibit 1. Plaintiff explains how the specific barriers relate to his disability in Exhibit 1 at ¶¶ 4-28 as follows:

4. Mr. Stillman suggests that if Plaintiff could fish in 2015, he cannot possibly be disabled as defined in 28 CFR 36.105.

5. "An impairment is a disability within the meaning of [the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Congress provided that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id*. § 1630.2(j)(1)(i)-(ii).

6. On July 17, 2015, Plaintiff was aware that he was suffering from the spread of prostate cancer and deteriorating right knee.

7. Plaintiff was diagnosed with renal cancer on or about March 3, 2018.

8. Plaintiff was diagnosed with severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy on or about February 20, 2018.

9. The deteriorating right knee became unbearable and, accordingly, Plaintiff's right knee was removed and replaced with a prosthesis on June 18, 2019.

10. Prostate cancer is by definition a physical impairment. 28 CFR 36.105(b)(2).

    a. Prostate cancer affects the operation of a major bodily function, to wit, genitourinary system, bladder and normal cell growth. 28 CFR 36.105(c)(1)(ii).

11. Renal cancer causes Plaintiff to experience pain in the lower back and abdomen, fatigue and anemia. Renal cancer is by definition a physical impairment. 28 CFR 36.105(b)(2).

7

    a. Renal cancer affects the operation of a major bodily function, to wit, genitourinary system, bladder and normal cell growth. 28 CFR 36.105(c)(1)(ii).

    b. The pain experienced as a consequence of renal cancer in the lower back and abdomen substantially limits the following major life activities: walking, standing, sitting, reaching, lifting and bending. 28 CFR 36.105(c)(1)(ii)

12. When active, 28 CFR 105(d)(iv), foraminal stenosis with symptoms of femoral neuropathy causes Plaintiff excruciating pain while walking, sitting, standing, resting, entering or exiting a vehicle, walking on sloped route, or doing anything at all.

    a. The pain experienced by Plaintiff as a consequence of foraminal stenosis with symptoms of femoral neuropathy radiates from the L5-S1 vertebrae starting at the right buttock, the back of the leg to the knee, then front of the lower leg and into the middle of the right foot.

    b. Foraminal stenosis with symptoms of femoral neuropathy substantially limits the following major life activities: sleeping, walking, standing, sitting, reaching, lifting and bending. 28 CFR 36.105(c)(1)(ii).

13. Degenerative right knee likewise causes Plaintiff excruciating pain in walking, standing or moving even with the use of a walker.

    a. The pain experienced by Plaintiff as a consequence of degenerative right knee includes pain in every step taken, particularly on sloped surfaces, entering or exiting a vehicle.

    b. Degenerative right knee substantially limits the following major life activities: sleeping, walking, standing, sitting, reaching, lifting and bending. 28 CFR 36.105(c)(1)(ii)

14. Plaintiff has attained ameliorative effects through mitigating measures as follows:

    a. Prostate cancer and general urinary track conditions were ameliorated through surgery, prognosis unknown.

    b. Renal cancer was ameliorated through cryoablation surgery, prognosis unknown.

    c. The severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy was ameliorated through nerve blocking. Nerve blocking is a temporary amelioration.

    d. Degenerative right knee was ameliorated with total knee.

15. The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures. 28 CFR 36.105(d)(viii).

16. Even with ameliorative effect of mitigating measures, foraminal stenosis with symptoms of femoral neuropathy, when active, causes Plaintiff excruciating pain while walking, sitting, standing, resting, entering or exiting a vehicle, walking on sloped route, or doing anything at all.

17. Even with ameliorative effect of mitigating measures, the right knee prosthesis causes Plaintiff pain at every step he takes walking, sitting, standing, resting, entering or exiting a vehicle, walking on sloped route, or doing anything at all.

18. The State of Arizona recognizes Plaintiff's disability:



19. As a result of his disabilities, Plaintiff requires ADA compliant elements in public accommodations as those facilities relate to Plaintiff's disability pursuant to ADAAG.

20. The ADAAG were promulgated by the United States Access Board and establish a national standard for minimum levels of accessibility. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 948 at n. 5 (9th Cir. 2011). (citing *Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698,

714 (D. Or. 1997)); see also *White v. Divine Investments, Inc.*, No. 04-cv-206 FCD DA, 2005 WL 2491543, at \*4 (E.D. Cal. Oct. 7, 2005). "A disabled person who encounters a 'barrier,' i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA." *Chapman*, 631 F.3d at 948 n. 5 (citing 42 U.S.C. § 12182(b)(1)(A)(i)).

21. Plaintiff personally encountered accessibility barriers in violation of ADAAG. These barriers did not completely preclude Plaintiff from entering or from using a facility in any way. Rather, the barriers interfered with the plaintiff's "full and equal enjoyment" of Defendant's facility. 42 U.S.C. § 12182(a).

22. The barriers alleged in Addendum A of the FAC affect Plaintiff's full and equal enjoyment of Defendant's Hotel on account of his disabilities referenced and explained above because these barriers relate to Plaintiff's disabilities and impair Plaintiff's full and equal access which constitutes discrimination under the ADA.

23. As a consequence of Plaintiff's disability, Plaintiff requires 28 CFR 36.302(e) disclosures that include information about accessible entrances to the hotel (e.g. disclosure of disability passenger drop of zone, the distance between accessible parking and the entrance to the hotel, proper signage in accessible parking), the path of travel to guest check-in and other essential services (e.g. accessible check in counter, accessible business counters, accessible concierge desk), and the accessible route to the accessible room or rooms and the description of accessible rooms (e.g., roll in shower, lowered peepholes, lowered security hardware, proper door opening hardware, water temperature, shower spray unit positive shut off, lowered AC and other controls etc.). In addition, 28 CFR 36.302(e) disclosures are required to include information about important features that do not comply with the Standards. Defendant breached 28 CFR 36.302(e) as documented in Addendum A to the FAC.

24. Further as a consequence of Plaintiff's disability, with respect to specific architectural barriers described in Addendum A, Plaintiff requires, at a minimum:

   a. A marked drop off zone so he can get in and out of the vehicle in a properly marked location in front of the Hotel.
   b. Accessible parking that is the closest to the entrance to the Hotel.
   c. Accessible concierge counter.
   d. ADA compliant and accessible check-in encounter.
   e. Doors that require 5 lbs or less to open.
   f. Doors that close in 5 second or more.

g.  Properly configured accessible lobby bar.
h.  Accessible gift shop counter.
i.  Accessible gift shop isles.
j.  Accessible gift shop shelves.
k.  Mobility accessible room.

25. Further as a result of Plaintiff's disability and the consequential entitlement to a mobility accessible room properly dispersed between various categories of rooms, Plaintiff enjoys the absolute right to (1) not pay a premium for an accessible room (28 CFR § 36.301) and to have the ability to rent a premium accessible room (dispersion).

26. Plaintiff is damaged by Hotel's premium charge and inadequate dispersion because (1) he is entitled to pay the same charge as non-disabled individuals and (2) he enjoys higher end accessible rooms.

27. Defendant (1) failed to provide information required by 28 CFR 36(302(e) and (2) failed to remove architectural barriers to accessibility and (3) charged more for the accessible room than an equal non-accessible room, all as more fully described in Addendum A.

28. Defendant's failure (1) to provide information required by 28 CFR 36(302(e) and (2) remove architectural barriers to accessibility and (3) its illegal premium charge for the accessible room deprived Plaintiff from full and equal enjoyment of the Hotel.

The jurisdictional requirements of Plaintiff's disability and causal connection between his disability and the barriers cannot be subject of dispute. It is worthy of note, however, that Defendant's entire disability argument is based on the 2002 Supreme Court decision of *Toyota Motor Mfg. Ky. v. Williams*, 534 U.S. 184, 195, 151 L. Ed. 2d 615, 122 S. Ct. 681 (2002) which was specifically overruled by the 2009 ADA Amendment Act.

## IV. OBJECTIVELY INDISPUTABLE FACTS DEMONSTRATE PLAINTIFF BASES HIS CLAIM BASED ON *PERSONAL* ENCOUNTERS WITH ACCESSIBILITY BARRIERS, NOT BOOKING WEBSITES.

Plaintiff makes 3 claims:  First, that the booking websites violate 28 CFR 36.302(e). This claim is documented in Addendum A containing actual booking agent's websites proving same. The support for this claim is further documented in the Declaration of Peter Strojnik at ¶23:

23. As a consequence of Plaintiff's disability, Plaintiff requires 28 CFR 36.302(e) disclosures that include information about accessible entrances to the hotel (e.g. disclosure of disability passenger drop of zone, the distance between accessible parking and the entrance to the hotel, proper signage in accessible parking), the path of travel to guest check-in and other essential services (e.g. accessible check in counter, accessible business counters, accessible concierge desk), and the accessible route to the accessible room or rooms and the description of accessible rooms (e.g., roll in shower, lowered peepholes, lowered security hardware, proper door opening hardware, water temperature, shower spray unit positive shut off, lowered AC and other controls etc.). In addition, 28 CFR 36.302(e) disclosures are required to include  information about important features that do not comply with the Standards. Defendant breached 28 CFR 36.302(e) as documented in Addendum A to the FAC.

Plaintiff's second claim is based on 28 CFR 36.301 which prohibits a place of lodging from charging more for an accessible room than a non-accessible room of the same category. This allegation is based on Defendant's own booking website and confirmed in Exhibit 1 at ¶32:

32. In ¶5 Mr. Neilson declares under the penalty of perjury that it is "absolutely false" that Defendant charges a premium for ADA-accessible room. This misstatement is belied by the following screen shot appearing in Addendum A of the FAC:

Non-Accessible Room



1
2
3
4
5
6
7
8
9
10
11

Accessible Room

| | | | |
|---|---|---|---|
| | | | |

12   Plaintiff's third claim is based on the actual, personal encounter with barriers to

13   accessibility documented in Addendum A to FAC. Despite the clear and unequivocal

14   allegations that the encounter with the architectural barriers was *personal*, and that it

15   occurred on March 14, 2019, Defendant's argument is based on the false premise that

16   allegations of architectural non-compliance they are based on the websites.   ¶ 35 of

    Exhibit 1 corrects this misapprehension:

17   35. In ¶9 Mr. Neilson avows that it was impossible for Plaintiff to go to the Hotel
18       and experienced architectural barriers on March 14, 2019. The following date
         stamped photographs bely this assertion:
19
20
21
22
23         
24
25
26
27
28

2019-03-14 17.16.28      2019-03-14 17.16.55      2019-03-14 17.17.32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



2019-03-14 17.17.52



2019-03-14 17.18.56



2019-03-14 17.23.39



2019-03-14 17.25.49



2019-03-14 17.27.33



2019-03-14 17.28.30



2019-03-14 17.29.24



2019-03-14 17.29.52



2019-03-14 17.30.00

## V.  PLAINTIFF HAS UNRUH AND DPA STANDING

Defendant's Unruh and DPA standing argument is a rehash of its argument in the original Motion to dismiss that was fully briefed in Plaintiff's Response, Doc 13 at pp 4-7. Plaintiff respectfully incorporates that discussion into this Response.  Plaintiff also respectfully notes that the FAC faithfully and completely followed the Court's analysis in its Order, Doc. 13.

## VI. PLAINTIFF'S NEGLIGENCE CLAIM IS ADEQUATELY STATED.

Defendant's negligence argument is also a repetition of the previous motion. Plaintiff respectfully incorporates the discussion of this matter in Doc. 13 at 10 in light of the facts contained in the FAC and Exhibit 1.

## VII.    THE COURT SHOULD  RETAIN SUPPLEMENTAL JURISDICTION

"Supplemental jurisdiction 'over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Vogel v. Winchell's Donut Houses Operating Co., LP*, 252 F.Supp.3d 977, 985 (C.D. Cal. 2017) (quoting 28 U.S.C. § 1367(a)). Here, the ADA  claims and the state law claims "share a common nucleus of operative fact and are part of the same case or controversy" because "[o]ther than the availability of statutory damages under state law, the state and federal claims are identical." *Id.*; *Moore v. Dollar Tree Stores Inc.*, 85 F.Supp.3d 1176, 1194 (E.D. Cal. 2015). The burdens of proof and standards of liability are the same, and the Unruh Act "specifically provides that a violation under the  ADA also constitutes a violation of the Unruh Act." *Moore*, 85 F.Supp.3d at 1194 (citing Cal. Civ. Code § 51(f)). Thus, "state and federal claims are so intertwined" that it would "best advance economy, convenience, fairness, and comity" to exercise supplemental jurisdiction over Plaintiff's state law claims. *Id.* Therefore, the Court should exercise supplemental jurisdiction over Plaintiff's state law claims.

A dismissal of State law claims would result in  incredible inefficiency and the unnecessary litigation expenses, delays, and costs to the US District Court, the California Superior Court and the parties.  By dismissing supplemental claims, the District Court forces Plaintiff to litigate Federal Claims to judgment in order to achieve the *res judicata* effect in the subsequently filed State Court action. This is an extraordinary wasteful use of

both Federal and State judicial economy not to mention the additional and completely unnecessary costs to the litigants. FRCP "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding". FRCP 1. As relevant to the question of a potential dismissal of supplemental State law claims, pursuant to 12(b)(1), Plaintiff emphasizes the requirements of (1) "just" (2) "speedy" and (3) "inexpensive" determination of every action.

The factual issues in this case are legally indistinguishable from those narrated in the *Castillo-Antonio* Decision, Exhibit 2. Plaintiff admits that his writing skills fail to match those of the author of that decision, the Honorable Joseph C. Spero, Northern District's Chief Magistrate Judge, and therefore quotes extensively from his decision, pp 8-14 (footnotes omitted):

**2. Supplemental Jurisdiction Under 28 U.S.C. § 1367**

 "When a federal court has original jurisdiction over a claim, then the court 'shall have supplemental jurisdiction supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy . . . .' " *Johnson v. United Rentals Nw., Inc.*, No. 2:11-cv-00204-JAM, 2011 WL 2746110, at *1 (E.D. Cal. July 13, 2011) (quoting 28 U.S.C. § 1367(a)). State claims are part of the same case or controversy as federal claims " 'when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.' " *Kuba v. 1-A Agricultural Ass'n*, 387 F.3d 850, 855-56 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.2d 923, 925 (9th Cir. 2003)).

 Supplemental jurisdiction is mandatory unless prohibited by § 1367(b), or unless one of the exceptions in § 1367(c) applies. [*Schutza v.*] *Cuddeback*, 262 F. Supp. 3d [1025] at 1028 [(S.D. Cal. 2017)] Under § 1367(c), a district court may "decline supplemental jurisdiction over a claim" if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

A district court's discretion to decline to exercise supplemental jurisdiction over state law "is informed by the *Gibbs* values 'of economy, convenience, fairness, and comity.' " *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, (1966)). A court may decline to exercise supplemental jurisdiction under § 1367(c) "under any one of [the statute's] four provisions." *San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478-79 (9th Cir. 1998). When dismissing a state-law claim pursuant to § 1367(c)(1)-(3), a district court need not state its reason for dismissal. *Id.* If a district court declines to exercise supplemental jurisdiction under § 1367(c)(4), however, the court must "articulate why the circumstances of the case are exceptional." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994). The Ninth Circuit has cautioned that declining supplemental jurisdiction based on § 1367(c)(4) should be the exception, not the rule. *Id.* at 1558.

### B. Supplemental Jurisdiction over Plaintiff's Claims Is Appropriate

Defendants do not contest that Plaintiff's ADA claim is properly before the court as a federal question, nor do they dispute that Plaintiff's state-law claims share a common nucleus of operative fact and are "part of the same case or controversy" as the ADA claim. … The court therefore has mandatory supplemental jurisdiction over Plaintiff's state law claims pursuant to § 1367(a) unless one of the exceptions of § 1367(c) applies. Defendants' arguments implicate § 1367(c)(1), § 1367(c)(2), and § 1367(c)(4).

#### 1. 28 U.S.C. § 1367(c)(1)

Defendants identify only one potential complex or novel issue of state law implicated by the instant case. They cite a Southern District of California case for the proposition that Plaintiff's state-law claims present a complex issue of state law because "the Unruh Act requires proof of intentional discrimination while the ADA does not, " even though a violation of the ADA constitutes a per se violation of the Unruh Act. *Schutza v. Lamden*, No. 3:17-CV-2562-L-JLB, 2018 WL 4385377, at *4 (S.D. Cal. Sept. 14, 2018) (describing the tension between the two standards as "an irreconcilably complex issue of state law"). This Court respectfully disagrees with the Southern District's decision. The *Lamden* court relied on a prior Southern District decision reached in 2007. *See Lamden*, 2018 WL 4385377, at *4 (citing *Cross v. Pac. Coast Plaza Invs., L.P.*, No. 06 CV 2543 JM RBB, 2007 WL 951772, at *5 (S.D. Cal. Mar 6, 2007)). However, the California Supreme Court resolved this issue in 2009. *See Munson*, 46 Cal.4th at 664-66 (holding that a plaintiff seeking damages for ADA violations under

the Unruh Act is not required to prove intentional discrimination). Accordingly, the Court finds that this does not constitute a complex or novel issue of state law within the meaning of § 1367(c)(1).

Defendants further contend that because the pleading requirements for California state disability discrimination claims were amended by the California legislature as recently as 2016, there might be new complex or novel issues of state law which California state courts should have an opportunity to resolve. The Court finds this argument unpersuasive. As district courts within the Ninth Circuit have repeatedly held, state pleading requirements for disability discrimination claims do not apply in federal court because such requirements are procedural in nature and federal courts use federal procedural rules. *See, e.g.*, *Johnson v. Mariani*, No. 17-CV-01628-BLF, 2017 WL 2929453, at *3 (N.D. Cal. July 10, 2017); *see generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Accordingly, the meaning of California's heightened disability discrimination pleading requirements is not at issue in this case.[4]

The Court finds no novel or complex issues of state law at issue in Plaintiff's state-law claims.

### 2. 28 U.S.C. § 1367(c)(2)

Defendants argue that Plaintiff's state-law claims substantially predominate over Plaintiff's ADA claim because (1) the remedies available to Plaintiff under the state-law claims are more expansive than those available under the ADA and (2) the ADA claim adds nothing to the lawsuit that could not be obtained in state court. Mot. at 7, 8.

The Supreme Court has held that state-law claims can "substantially predominate . . . in terms of proof, of scope of issues raised, or of comprehensiveness of remedy sought." *United Mine Workers of Am.*, 383 U.S. at 726. Defendants cite several district court decisions which have held that the more expansive remedies available to plaintiffs under the Unruh Act and CDPA mean that such claims necessarily substantially predominate over ADA claims. *See, e.g., Cuddeback*, 262 F.Supp.3d at 1030 (holding that monetary damages of $36, 000 sought by a plaintiff under the Unruh Act substantially predominated over federal injunctive relief sought under the ADA). But district courts within the Ninth Circuit are split on this issue. *Compare, e.g., Vogel v. Winchell's Donut*, 252 F.Supp.3d 977, 986 (C.D. Cal. 2017) (holding that a plaintiff's state-law claims substantially predominated over an ADA claim because the remedies available under state law were more expansive and the ADA claim added no unique remedy to the suit), *with, e.g., Schoors v. Seaport Vill. Operating Co., LLC*, No. 16CV3089 (AJB), 2017 WL 1807954 (S.D. Cal. May 5, 2017) (holding that although a

plaintiff's Unruh Act claim offered more comprehensive remedies than their ADA claim, the Unruh Act claim did not substantially predominate over the ADA claim because it involved identical facts, witnesses, and evidence).

In resolving this issue, this Court follows the approach taken in *Schoors* and accordingly finds that Plaintiff's state-law claims do not substantially predominate over Plaintiff's ADA claim. Though the remedies Plaintiff seeks pursuant to his state-law claims exceed those available under the ADA, the federal and state claims involve nearly identical facts, witnesses, and evidence because Plaintiff's Unruh Act and CDPA claims are premised on proving a violation of the ADA. ... To prove his Unruh Act and CDPA claims, Plaintiff need only make an additional showing of the particular occasions on which he encountered the barrier or was deterred from visiting the market to establish statutory damages. *See Kohler v. Rednap, Inc.*, 794 F.Supp.2d 1091, 1096 (C.D. Cal. 2011). Thus, even though the state-law claims provide for more comprehensive remedies, they do not substantially predominate over the ADA claim because the proof required for both the state and federal claims is nearly identical.

Applying the *Gibbs* factors-economy, convenience, fairness, and comity-to the § 1367(c)(2) analysis supports this conclusion. As the *Kohler* court noted:

> It is clearly more convenient and economical for the ADA claim and state-law claims based on those same ADA violations to be litigated in one suit. Moreover, comity does not counsel in favor of declining jurisdiction here, where state law incorporates the federal substantive standard and simply provides additional remedies. Finally, the Court does not find it unfair to have the state-law claims litigated in this forum, rather than in a separate, and largely redundant, state-court suit.

*Id.* The *Gibbs* factors thus weigh in favor of finding that Plaintiff's state-law claims do not substantially predominate over his ADA claim.[6]

### 3. 28 U.S.C. § 1367(c)(4)

Defendants argue that Plaintiff is using his ADA claim as a "jurisdictional hook" to have his state-law claims heard in federal court to bypass the heightened pleading requirements for disability discrimination claims used in California state courts. … Plaintiff asserts construction-related accessibility claims and he is a high-frequency litigant as defined by California Code of Civil Procedure section 425.55(b). … Accordingly, Plaintiff would be subjected to each of the heightened pleading requirements in California Code of Civil Procedure section 425.50 if he filed in California

state court. The court in *Johnson v. Morning Star Merced, LLC* succinctly
defined those heightened pleading requirements:

> "Section 425.50 imposes the following pleading requirements:
> (1) complaint must allege whether it is filed by or on behalf of
> a high-frequency litigator; (2) the number of complaints
> alleging a construction related accessibility claim that were
> filed by the high frequency litigator in the past twelve months;
> (3) the reason the high frequency litigator was in the region of
> the defendant's business; and (4) the specific reason that the
> high frequency litigator desired access to the defendant's
> business. Cal. Code Civ. P. § 425.50(a)(4). Additionally, a high
> frequency litigator must verify his complaint and pay an
> additional filing fee. See Cal. Code Civ. P. § 425.50(b); Cal.
> Gov. Code § 70616.5.

*Johnson v. Morning Star Merced, LLC,* No. 1:18-CV-0558 AWI EPG, 2018
WL 4444961, at *5 (E.D. Cal. Sept. 14, 2018). Federal courts have applied
the Federal Rules of Civil Procedure instead of the pleading requirements
outlined in California Code of Civil Procedure section
425.50. *Id.* (citing, *e.g.*, *Saavedra v. Chu*, 2017 WL 2468779, *1 (C.D. Cal.
June 7, 2017); *Anglin v. Bakersfield Prosthetic & Orthotics Ctr.*, 2013 WL
6858444, *4-5 (E.D. Cal. Dec. 30, 2013); *Oliver v. In-N-Out Burgers*, 286
F.R.D. 475, 477 (S.D. Cal. 2012)).

Defendants note several district court decisions that have accepted their
argument. *See, e.g.*, *Velez v. Il Fornaio (Am.) Corp.*, No. 3:18-cv-1840-
CAB, 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018) (declining to
exercise supplemental jurisdiction over a plaintiff's Unruh Act claim in part
because doing so would frustrate the California legislature's attempt to
discourage vexatious disability discrimination by adopting heightened
pleading requirements for the Unruh Act); *Cuddeback*, 262 F.Supp.3d at
1025; *Brick Oven Rest.*, 406 F.Supp.2d at 1120. These cases "emphasize that
the plaintiffs are high frequency litigants, that there is nothing to be gained
by litigating in federal court other than to avoid state pleading requirements,
the plaintiffs are engaged in forum shopping, and that considerations of
comity and discouraging forum shopping constitute 'exceptional
circumstances' under § 1367(c)(4)." *Morning Star Merced, LLC*, 2018 WL
4444961, at *5.

Other district court decisions have, however, rejected this argument. *See,
e.g.*, *Morning Star Merced, LLC*, 2018 WL 444496; *Mariani*, 2017 WL
2929453 at *11; *Schoors*, 2017 WL 1807954. "These cases emphasize that
considerations of fairness and efficiency outweigh any concerns over comity,
and that there is nothing improper about a litigant choosing to litigate in

1  federal court." *Morning Star Merced, LLC,* 2018 WL 4444961, at *6
2  (internal citations omitted).

3  Applying the *Gibbs* factors, this Court finds the reasoning *of the Morning*
4  *Star Merced* court persuasive and accordingly finds no compelling reason to
   decline to exercise supplemental jurisdiction over Plaintiffs state-law claims.
5  Comity concerns weigh in favor of Defendants' argument, given that the
   California legislature has enacted heightened pleading requirements for suits
6  like this one. However, "***it is not efficient, convenient, or fair to require***
7  ***[Plaintiff] to file two nearly identical cases involve [sic] materially identical***
   ***proof and issues***." *Id.* It is more economical to have all of Plaintiff s claims
8  heard in one court "instead of requiring duplicative efforts in multiple courts,
9  possibly involving multiple juries, and possibly leading to inconsistent
   results." *Id.* Nor should a plaintiff be forced to choose between either
10  proceeding in two separate forums or forsaking the plaintiff's entitlement to
11  bring an ADA claim in federal court and instead litigating it in state court.
   Accordingly, the Court finds no compelling reason to decline to
12  exercise supplemental jurisdiction over Plaintiff s state-law claims.
   (Emphasis supplied.)

13  **IX.COLLATERAL ESTOPPEL IS INAPPLICABLE**

14      Defendant bases its collateral estoppel on the trial court's dismissal of the
15  *Pasadena Robles Acquisition* matter in which the Court dismissed Plaintiff's Complaint
16  without leave to amend. The dismissal in that case is on appeal, *see* 9th Circuit Court of
17  Appeals No. 19-56037 *Strojnik v. Pasadena Robles.*

18      The doctrine of collateral estoppel prevents the parties from relitigating issues
19  actually litigated and necessarily decided, after a full and fair opportunity to be heard, in
20  a prior proceeding. *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005). A prior
21  decision has preclusive effect where: (1) the issue necessarily decided at the previous
22  proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding
23  ended with a **final judgment** on the **merits**; and (3) the party against whom collateral
24  estoppel is asserted was a party or in privity with a party at the first
25  proceeding. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).
26  Because collateral estoppel is a procedural issue not within the Federal Circuit's exclusive
27  jurisdiction, Ninth Circuit law controls. *See Phil-Insul Corp. v. Airlite Plastics Co.*, 854
   F.3d 1344, 1353 (Fed. Cir. 2017).
28

Here, the issues are not the same. In *Pasadena Robles* the Complaint did not allege that Plaintiff personally encountered barriers to accessibility as the FAC does here. In *Pasadena Robles*, unlike here, the Court denied leave to amend despite the proposed amendment that would comply with *CREEC*. The *Pasadena Robles* decision did not end with a final judgment and is, therefore, not 'sufficiently firm". *See Luben Industries v. United States of America,* 707 F.2d 1037 (9th Cir. 1983). Lastly, the *Pasadena Robles* decision was not on the merits.

## CONCLUSION AND PRAYER FOR RELIEF

Plaintiff faithfully filed the FAC based on a thorough analysis of this Court's leave to amend. While Defendant has produced Declarations of Messrs. Stillman and Neilson, these Declarations add no jurisdictional facts and the "facts" they submit, while ebullient, are woefully  inaccurate. Plaintiff submits his own Declaration which not only corrects the factual errors in Defendant's Declarations but also firmly establishes Plaintiff's Standing. Plaintiff requests that Defendant's Second Motion to Dismiss be denied in its entirety.

RESPECTFULLY SUBMITTED this 2nd day of October 2019.

PETER STROJNIK

Plaintiff

DISTRIBUTED THROUGH PACER