# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STROJNIK, SR., Plaintiff, <br><br> v. <br><br> ORANGEWOOD LLC d/b/a DOUBLETREE SUITES BY HILTON ANAHEIM RESORT CONVENTION CENTER, Defendant. | CV 19-00946 DSF (JCx) <br><br> Order GRANTING Defendant's Motion to Dismiss (Dkt. 40) |

Defendant Orangewood LLC, d/b/a DoubleTree Suites by Hilton Anaheim Resort Convention Center (Defendant), moves to dismiss Plaintiff Peter Strojnik's Second Amended Complaint (SAC) in its entirety.  Dkt. 40 (Mot.).  Plaintiff opposes the Motion.  Dkt. 41 (Opp'n). The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.

## I.  Factual and Procedural Background

Plaintiff, appearing *pro se*, is a resident of Maricopa County, Arizona.  Dkt. 37-2 (SAC) ¶ 3.  Plaintiff alleges that he is a disabled person with severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer, and renal cancer, and a degenerative right knee, which has since been replaced.  Id. ¶¶ 2-3.  Plaintiff's physical impairments substantially limit his major life activities.  Id. ¶ 5.  Plaintiff walks, stands, sleeps, and climbs stairs with difficulty and pain.  Id.  The renal cancer causes abdominal and back pain.  Id. ¶ 6.  The degree of Plaintiff's pain fluctuates from dull to

extreme.  Id. ¶ 5.  At lodging facilities, Plaintiff requires ADA compliance "particularly applicable to his mobility, both ambulatory and wheelchair assisted."  Id. ¶ 29.  His disabilities, when active, require the use of a wheelchair.  Id. ¶ 8(i).

Defendant owns, operates, or leases a lodging facility located at 2085 S. Harbor Blvd., Anaheim, California, 92802 (the Hotel).  Id. ¶ 4.  Plaintiff has visited the Disneyland area at least 20 times, and intends to continue visiting the area on a regular basis.  Id. ¶¶18(c), 32, 35.  Once the Hotel is compliant, Plaintiff intends to lodge there for the purpose of visiting Disneyland, confirming ADA compliance, spending the night on the way to Northern California, and attending court hearings.  Id. ¶¶18(d), 32, 37.  Plaintiff alleges that he has lodged at Hilton hotels in the past and, "to the best of his memory," has stayed at the Hotel.  Id. ¶¶ 18(f), 36.  Plaintiff alleges that he intended to visit the Disneyland area in mid-March and prefers to stay at Hilton properties because he and Mrs. Strojnik are members of their rewards program.  Id. at ¶¶ 30-31.

On or around March 14-15, 2019, Plaintiff alleges he reviewed booking websites, including third party booking websites (Third-Party Websites) and Defendant's website (Hotel Website).  Id. ¶¶ 39, 40, 44 & Addendum A at 18-21 (Third-Party Website), 21-24 (Hotel Website).[1]  Plaintiff alleges that both the Third-Party Websites and the Hotel Website "failed to identify and describe mobility related accessibility

---

[1] Plaintiff's allegation that he visited the Hotel's website is contradicted by the information he included in Addendum A under "1st Party Booking Website."  See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008) (Courts "need not accept as true allegations contradicting documents that are referenced in the complaint").  The link included is for "guestreservations.com."  Following the link, the landing page prominently states that "Guest Reservations™ is an independent travel network offering over 100,000 hotels worldwide."  The pictures on guestreservations.com match those included in Addendum A.  This website is not Hilton's website and therefore the Court considers all website claims as claims regarding third-party websites.

features and guest rooms offered through its reservation service in
enough detail to reasonably permit Plaintiff to assess independently
whether [the Hotel] [met] his accessibility needs." Id. ¶¶ 41, 44.
Plaintiff also alleges that the Third-Party Websites charge a premium
for accessible rooms at the Hotel and that on both the Hotel Website
and Third-Party Website, reservations for accessible guest rooms
cannot be made in the same manner as guest rooms without
accessibility features because a potential guest is required to further
investigate accessibility prior to booking a room. Id. ¶¶ 7(b), 42-43, 45.
Plaintiff also alleges that the mobility accessible rooms are not properly
dispersed, denying him equal access to the different categories of
rooms. Id. ¶ 9. Plaintiff further alleges, on information and belief, that
Defendant has failed to supply accessibility information to the Third-
Party Websites and is aware of the Third-Party's websites premium
charge and has failed to remedy it. Id. ¶¶ 7(d), 25. As a result of the
above, Plaintiff declined to book a room at the Hotel, and stayed at a
nearby Marriott. Id. ¶ 50.

Because Plaintiff discovered that the Marriott also was not ADA
compliant, see id. ¶ 46(a), Plaintiff visited the Hotel on or about March
14-15, 2019, and encountered architectural barriers to accessibility that
were not noted online that interfered with his full and equal enjoyment
of the facility on account of his disabilities, including no marked
passenger drop off zone, accessible parking not closest to entry,
inaccessible concierge counter, inaccessible lobby bar, inaccessible gift
shop counter and aisles, improperly configured check-in counter, doors
weighing more than five pounds to open, and doors taking less than five
seconds to close. Id. ¶ 46 & Addendum A at 25-37.[2] Plaintiff is

---

[2] As Defendant points out, the original complaint alleged that the photos
from Addendum A were available online, Dkt. 2 (Compl.) ¶¶ 22-23, while the
FAC claimed that Plaintiff personally visited the Hotel and the barriers
depicted in Addendum A were "not noted online, but in person," Dkt. 19
(FAC) ¶ 38; see also SAC ¶ 46. However, in the Ninth Circuit, even if "two
pleadings [a]re irreconcilably at odds with each other, this would not, by
itself, establish that the later pleading is a sham." PAE Gov't Servs., Inc. v.

deterred from patronizing the Hotel based on his knowledge of these
barriers.  See id. ¶¶ 18, 18(b).  Plaintiff intends to visit the Hotel at a
"specific time" when Defendant's alleged ADA violations are remedied.
Id. ¶¶ 18(g), 19.

Plaintiff filed a complaint on May 28, 2019.  Compl.  On August
8, 2019, the Court dismissed Plaintiff's complaint with leave to amend.
Dkt. 18 (MTD Order).  On August 28, 2019, Plaintiff filed the FAC,
which the Court again dismissed for failing to adequately plead
standing.  Dkt. 34 (MTD FAC Order).  Now, Plaintiff files the SAC in
an attempt to resolve prior pleading deficiencies.

## II.  Legal Standard

### A.    12(b)(1) Standard

The plaintiff bears the burden of establishing subject matter
jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,
377 (1994).  Motions to dismiss for lack of subject matter jurisdiction
are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure.
A Rule 12(b)(1) jurisdictional challenge may be facial or factual.  Safe
Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a
facial challenge, the moving party asserts that the allegations in the
complaint are "insufficient on their face" to establish federal
jurisdiction.  Id.  "Whether subject matter jurisdiction exists therefore
does not depend on resolution of a factual dispute, but rather on the
allegations in [the] complaint."  Wolfe v. Strankman, 392 F.3d 358, 362
(9th Cir. 2004).  The court accepts the allegations as true, and the
plaintiff need not present evidence outside the pleadings.  Id.

A factual jurisdictional challenge occurs when the moving party
"disputes the truth of the allegations that, by themselves, would
otherwise invoke federal jurisdiction."  Safe Air, 373 F.3d at 1039.
Where the moving party makes a factual challenge by presenting
affidavits or other evidence, "the party opposing the motion must

MPRI, Inc., 514 F.3d 856, 858 (9th Cir. 2007).  The mechanism for
challenging irreconcilable pleadings is Rule 11, not Rule 12.  Id.

furnish affidavits or other evidence necessary to satisfy its burden of
establishing subject matter jurisdiction." Wolfe, 392 F.3d at 362
(quoting Safe Air, 373 F.3d at 1039. In resolving the jurisdictional
issue, the court does not accept the allegations in the complaint as true.
Safe Air, 373 F.3d at 1039. "[The court] may hear evidence and make
findings of fact necessary to rule on the subject matter jurisdiction
question prior to trial," Rosales v. United States, 824 F.2d 799, 803 (9th
Cir. 1987), and it may resolve the merits of the jurisdictional issue even
though material facts in the case are disputed, Augustine v. United
States, 704 F.2d 1074, 1077 (9th Cir. 1983).

## B.    Rule 12(b)(6) Standard

Rule 12(b)(6) allows an attack on the pleadings for failure to state
a claim on which relief can be granted. "[W]hen ruling on a defendant's
motion to dismiss, a judge must accept as true all of the factual
allegations contained in the complaint." Erickson v. Pardus, 551 U.S.
89, 94 (2007) (per curiam). However, a court is "not bound to accept as
true a legal conclusion couched as a factual allegation." Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked
assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting
Twombly, 550 U.S. at 557) (alteration in original) (citation omitted). A
complaint must "state a claim to relief that is plausible on its face."
Twombly, 550 U.S. at 570. This means that the complaint must plead
"factual content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S.
at 678. There must be "sufficient allegations of underlying facts to give
fair notice and to enable the opposing party to defend itself
effectively . . . and factual allegations that are taken as true must
plausibly suggest an entitlement to relief, such that it is not unfair to
require the opposing party to be subjected to the expense of discovery
and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.
2011).

Ruling on a motion to dismiss will be "a context-specific task that
requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct, the
complaint has alleged—but it has not 'show[n]'—'that the pleader is
entitled to relief.'"  <u>Iqbal</u>, 556 U.S. at 679 (alteration in original)
(citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

As a general rule, leave to amend a complaint that has been
dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However,
leave to amend may be denied when "the court determines that the
allegation of other facts consistent with the challenged pleading could
not possibly cure the deficiency."  <u>Schreiber Distrib. Co. v. Serv-Well
Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986).

## III.  Discussion

### A.    Collateral Estoppel

Defendant argues that rulings in two other district court cases
brought by Plaintiff are binding on Plaintiff here through collateral
estoppel because Plaintiff "made the identical claims there as he has
done in this case."  <u>See</u> Mot. at 7, 24.  Collateral estoppel, or issue
preclusion, applies when "(1) the issue at stake was identical in both
proceedings; (2) the issue was actually litigated and decided in the prior
proceedings; (3) there was a full and fair opportunity to litigate the
issue; and (4) the issue was necessary to decide the merits."  <u>Janjua v.
Neufeld</u>, 933 F.3d 1061, 1065 (9th Cir. 2019) (quoting <u>Oyeniran v.
Holder</u>, 672 F.3d 800, 806 (9th Cir. 2012), <u>as amended</u> (May 3, 2012)).

Defendant has not identified an issue in this proceeding that is
identical to any issue decided in <u>Strojnik v. Pasadena Robles
Acquisition, LLC</u>, No. 2:19-CV-02067-AB (PJWx), 2019 U.S. Dist.
LEXIS 213070, at *4 (C.D. Cal. Aug. 14, 2019) or <u>Strojnik v. Kapalua
Land Co. LTD</u>, No. CV 19-00077 SOM-KJM, 2019 WL 4685412, at *7
(D. Haw. Aug. 26, 2019), <u>report and recommendation adopted sub nom.
Strojnik v. Kapalua Land Co. Ltd.</u>, No. CV 19-00077-SOM-KJM, 2019
WL 4684450 (D. Haw. Sept. 25, 2019).  Whether Plaintiff had standing
to challenge purported ADA violations in other hotels is not "identical"

to any issue in this case.[3]  Cf. Howard v. City of Coos Bay, 871 F.3d 1032, 1042 (9th Cir. 2017) ("Asserting the same cause of action in two separate suits does not mean the underlying claims, which are based on different facts, are inherently identical.").  Collateral estoppel does not apply.[4]

## B.   Americans with Disabilities Act (First Cause of Action)

Defendant moves to dismiss Plaintiff's First Cause of Action under the Americans with Disabilities Act (ADA) on the grounds that Plaintiff lacks Article III standing.  Defendant brings a factual jurisdictional challenge.  Mot. at 3.[5]

---

[3] But the decisions in those cases certainly should have indicated to Plaintiff that his Complaint-drafting skills needed improvement.

[4] Plaintiff's claim of collateral estoppel based on other decisions in his favor, Opp'n at 10, also fails.

[5] Defendant contends that because this is a factual challenge, "the Court need not presume the truthfulness of Plaintiff's allegations."  Mot. at 4.  However, it is not appropriate for courts to consider evidence where "'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action."  Safe Air, 373 F.3d at 1039 (quoting Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc., 711 F.2d 138, 139 (9th Cir. 1983)); see also Acosta v. Fast N Esy II, Inc., No. 1:16-CV-01150-LJO-SAB, 2017 WL 75796, at *4 (E.D. Cal. Jan. 9, 2017) ("Addressing Defendants' jurisdictional attack requires the Court to resolve disputed issues of fact that are pertinent to the merits of the ADA claim.  At this early stage of the litigation, when no discovery has been conducted, resolving jurisdictional facts that are intertwined with the substantive merits of Plaintiff's ADA claim is improper. . . . Further, at this stage, the Court declines to convert Defendants' Rule 12(b)(1) motion into one for summary judgment.  As the pleadings have not been closed, it would be premature to consider a motion for summary judgment before Plaintiff has an opportunity to conduct any discovery.").  Therefore, the Court declines at this time to consider Defendant's evidence challenging whether Plaintiff is disabled or whether the alleged barriers in fact exist at the Hotel.  See Mot. at 9-10.  Considering the nature and number

As the party invoking jurisdiction, Plaintiff bears the burden of establishing standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  For Plaintiff to allege Article III standing, he must sufficiently plead an (i) injury-in-fact, (ii) that is causally connected to Defendant's challenged conduct, and (iii) likely to be "redressed by a favorable decision."  Id. at 560-61 (quoting Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 27 (1976)).  The alleged injury-in-fact must be: (i) "concrete and particularized" and (ii) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Id. at 560 (first citing Allen v. Wright, 468 U.S. 737, 756 (1984), abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014); then quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).  Because injunctive relief is the only remedy to individuals under Title III of the ADA, Plaintiff must also show he faces a "real and immediate threat of repeated injury" to establish an injury-in-fact for purposes of standing. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (quoting Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004)).  The Ninth Circuit has held that there are two ways in which an ADA plaintiff may establish standing to sue for injunctive relief: the plaintiff can either demonstrate "deterrence" or "injury-in-fact coupled with an intent to return to a noncompliant facility."  Id. at 944.

### 1.    Plaintiff's Alleged Injuries are Not Concrete and Particularized

#### a.    Personally Encountered Architectural Barriers[6]

In its two prior Orders dismissing Plaintiff's complaints, the Court has made clear that Plaintiff must plead how each alleged

---

of lawsuits Plaintiff has filed in California and other states, however, eventually Plaintiff will be required to answer to some court concerning the true nature of his disabilities and the truth of his claims.

[6] Defendant argues that "Plaintiff had no bona fide intent to use the Doubletree" when he allegedly visited the hotel on March 14-15 because "he was already staying at another hotel."  Mot. at 3.  However, the Ninth Circuit

barrier affected him because of his disability.  Dkt. 18 (MTD Order) at 6; Dkt. 34 (MTD FAC Order) at 7.  Although purporting to "strictly, absolutely and unquestionably correct[] the imperfections in [the] FAC," Opp'n at 1, Plaintiff again parrots conclusions, rather than providing facts.[7]  Allegations that "the barriers at [a public accommodation] 'denied [plaintiff] full and equal enjoyment' is precisely the 'formulaic recitation' of the elements of a claim that the Supreme Court has deemed insufficient under Rule 8. . . . [A plaintiff] must do more than offer 'labels and conclusions' that parrot the language of the ADA."  Chapman, 631 F.3d at 955 n.9 (citing Iqbal, 556 U.S. at 678).  Plaintiff has failed to do so.

**Marked Drop Off Zone.**  Sections 209 and 503 of the 2010 ADA Standards for Accessible Design (ADAAG) require passenger loading zones to have a marked access aisle.  There is no requirement for a drop off zone to be otherwise marked.  Plaintiff alleges that he requires a "marked drop off zone so he can get in and out of the vehicle in a properly marked location in front of the Hotel" and because he "requires the closest accessible route" from the drop off point to the hotel entrance.  SAC ¶ 8(a).  Addendum A includes a picture of the front of the Hotel with the caption "[n]o marked passenger drop off zone."  Addendum A at 26.  To the extent Plaintiff is arguing there

---

has held that "motivation is irrelevant to the question of standing under Title III of the ADA."  Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr., 867 F.3d 1093, 1102 (9th Cir. 2017) (hereinafter CREEC).

[7] Particularly frustrating is Plaintiff's failure to make any changes to Addendum A despite his evolving theories and the specific flaws identified in the Court's prior order.  See MTD FAC Order at 8.  While Plaintiff now claims that he took the pictures in Addendum A while he was at the Hotel in person, the "manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel" still relates to the issue he describes from the websites: "failing to identify and describe accessible features . . . in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs."  See Addendum A at 26-37.

should be a sign or some other identification about where to get dropped off, such a requirement is not found in the ADAAG.  To the extent Plaintiff is arguing that there is no marked access aisle, he has not sufficiently alleged that he needs an access aisle to exit a vehicle.  Therefore, Plaintiff has not sufficiently alleged a concrete and particularized injury related to a "marked passenger drop off zone."

**Accessible Parking.**  ADAAG Section 208.3[8] requires accessible spaces to "be located on the shortest *accessible* route from parking to an *entrance*."  (emphasis in original).  Therefore, Plaintiff's allegation that the ADAAG requires "accessible parking that is the closest to the entrance to the Hotel" is not necessarily correct and the picture with the caption "[a]ccessible parking not closest to entry" does not sufficiently allege an ADA violation.  See SAC ¶ 8(b) & Addendum A at 27.  More importantly, Plaintiff's allegation that he "as a passenger or driver, requires the closest route from accessible parking to the hotel lobby," SAC ¶ 8(b) continues to fall short.  Although this deficiency was identified previously, Plaintiff still does not allege that he has a valid disabled person parking placard entitling him to park in an accessible spot at the Hotel.[9]  Therefore, Plaintiff has not sufficiently alleged a concrete and particularized injury related to accessible parking.

**Accessible Counters.**  ADAAG Section 904.4 sets out the requirements for sales and service counters.  Plaintiff includes a number of photographs with the captions "[i]naccessible concierge counter," "[i]mproperly configured check in counter," "[i]naccessible lobby bar," "[i]naccessible bar," and "inaccessible gift shop counter."

---

[8] The SAC incorrectly refers to Section 207.

[9] The Court acknowledges that in a previously submitted declaration, Plaintiff included a picture of an Arizona Disability Parking placard.  See Dkt. 28-1 (Strojnik Decl.) ¶ 18.  Plaintiff provides no reason why he excludes any reference to the placard in the SAC.  Further, this picture does not suffice as an allegation that Plaintiff is entitled to park in an accessible space at the Hotel—Plaintiff does not declare that the placard in the picture was issued to him, that it is still valid, or that it entitles him to park in an accessible spot in California, rather than Arizona.

Addendum A at 28-29, 33-35.  However, the SAC does not explain how
any of the counters are inaccessible or improperly configured, or what
specific ADAAG requirement they purportedly violate.  Additionally, in
explaining why he needs accessible counters, Plaintiff states in
conclusory fashion that he "requires accessible service counters because
his disabilities . . . substantially limit[] him from access to the non-
compliant" counters.  SUF ¶¶ 8(c), (d), (g), (h).  As noted above,
parroting of the statutory language is insufficient.  Therefore, Plaintiff
has not sufficiently alleged a concrete and particularized injury related
to the Hotel's counters.

      **Accessible Doors.**  ADAAG Section 404 governs requirements
for doors, doorways, and gates that "are part of an *accessible* route."
ADAAG § 404.1 (emphasis in original).  "Handles, pulls, latches, locks,
and other *operable parts* on doors and gates shall comply with 309.4."
Id. § 404.2.7 (emphasis in original).  That provision requires operable
parts to be activated with a force of 5 pounds maximum.  Id. § 309.4.
Doors and gates with closers must allow 5 seconds minimum for the
door to move "from an open position of 90 degrees . . . to a position of 12
degrees."  Id. § 404.2.8.1.  Doors and gates with spring hinges must
allow 1.5 seconds minimum for the door to move from "an open position
of 70 degrees . . .  to the closed position."  Id. § 404.2.8.2.  Plaintiff
includes two pictures of doors with the caption "[m]ore than 5 lbs to
open" and one picture (containing one glass door and one gate) with the
caption "less than 5 s to close."  Addendum A at 30-32.  However,
Plaintiff does not allege that any of these doors is part of an accessible
route, nor does he allege whether it was the glass door or the gate that
allegedly took less than 5 seconds to close or whether the offending door
had a closer or hinges.[10]  Moreover, Plaintiff alleges that he needs doors

---

[10] Defendant submits a declaration that Plaintiff could not have opened this
door to test its compliance with the ADA because it requires a key.  Mot. at
16 n.8 (citing Suppl. Neilson Decl. ¶¶ 3-5).  However, Plaintiff does not allege
that he personally opened the door, only that it took "less than 5 s to close."
Addendum A at 32.  Plaintiff could have been watching other guests exit the
Hotel to the pool.  Ninth Circuit precedent makes clear that "[i]t is the

to require 5 pounds or less to open "because his disabilities . . . substantially limit[] him from exerting a force over 5 lbs." SAC ¶ 18(e). However, Plaintiff's allegations describe his limited ability to walk, sit, lay down, and climb stairs; he does not allege facts that his disability makes it difficult to open doors. On the other hand, Plaintiff alleges that he needs doors that close in five seconds or more because he has difficulty "getting out of the way of a closing door within 5 seconds." SAC ¶ 18(f).[11] Because of Plaintiff's allegations that he has difficulty walking, SAC ¶ 5, this barrier appears to be related to his alleged disability. However, because Plaintiff does not allege exactly which door he is referring to, that the door was part of an accessible route, or even that it was the only way to get to the pool, he has not alleged standing to challenge the pictured doors.

**Accessible Aisles**. ADAAG Section 403 addresses "walking surfaces that are a part of an *accessible* route." ADAAG § 403.1. Again, Plaintiff fails to allege that the gift shop aisle is part of an accessible route or allege in what way the aisles pictured violate the ADAAG. Instead, Plaintiff includes two pictures with the caption "[i]naccessible gift shop isles [sic]." Addendum A at 36-37. This is insufficient to allege a violation of the ADA. Further, Plaintiff does allege that "his disabilities, when active, require the use of a wheelchair." Id. ¶ 8(i).[12] However, it is unclear from this allegation how often Plaintiff uses a wheelchair—whether it is "most of the time, or only rarely." See Rutherford v. Cesar's Mexican Rest., LLC, No.

---

plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative." CREEC, 867 F.3d at 1099.

[11] The Court acknowledges that the three videos referenced by Defendants, Mot. at 9-10, cast serious doubt on the truth of this allegation. However, for the reasons stated above, the Court declines to consider the videos at this stage of the litigation.

[12] It is perplexing to the Court why Plaintiff does not make any allegations related to wheelchair use in support of his claims regarding the other barriers for wheelchair users. Nevertheless, the reasoning in this section applies to all alleged barriers that affect wheelchair users.

19CV1416-LAB (JLB), 2019 WL 4193392, at *1 (S.D. Cal. Sept. 3, 2019).  Plaintiff has not alleged any facts showing that he would be reasonably likely to use a wheelchair if and when he returns to the Hotel.  Therefore, even if Plaintiff had sufficiently alleged a violation of the ADA regarding the gift shop aisles (or other barriers related to wheelchair users), the Court finds that whether those alleged barriers would prevent Plaintiff's enjoyment of the hotel in the future is too remote to constitute a real and immediate threat entitling him to injunctive relief.  See O'Campo v. Bed Bath & Beyond of California, LLC, 610 F. App'x 706, 708 (9th Cir. 2015) ("[T]he Court cannot reasonably infer that incomplete insulation covering the pipes beneath the lavatory would interfere with [plaintiff's] full and equal access to [defendant's] facilities when his alleged impairment required that he use a cane" and not a wheelchair).  Therefore, Plaintiff has not sufficiently alleged a concrete and particularized injury related to the gift shop aisles.

> b.  Alleged Barriers Caused by Lack of Information on Websites

The ADA applies to websites that "impede[] access to the goods and services of . . . places of public accommodation."  Robles v. Domino's Pizza, LLC, 913 F.3d 898, 905 (9th Cir. 2019), cert. denied, No. 18-1539, 2019 WL 4921438 (U.S. Oct. 7, 2019).  As Ninth Circuit precedent makes clear, Plaintiff can pursue injunctive relief even if he did not actually visit the Hotel.  See CREEC, 867 F.3d at 1099.  However, the access barriers encountered over the phone or on a website must still relate to the plaintiff's disabilities.  See id. at 1097 (Plaintiffs "are physically disabled and use wheelchairs for mobility" and were informed by defendant's hotels that they "did not provide equivalent shuttle service for mobility-impaired people").

As noted above, Plaintiff's Addendum A includes only two third-party websites, Hotels.com and GuestReservations.com.  See Addendum A at 18-24.  Therefore, Defendant cannot be liable under this section unless it failed to "make[] available such rooms and [accessibility] information to [the] third-party reservation provider."  28

C.F.R. § Pt. 36, App. A (2010 DOJ ADAAG Guidance).[13]  Plaintiff
alleges, on information and belief, that Defendant has failed to supply
accessibility information to the Third-Party Websites and that "the
information is strictly within the knowledge of Defendant."  Id. ¶¶ 7(d),
25.[14]  Plaintiff includes no additional factual allegations in support of
this claim, except for the fact that the Third-Party Websites offer the
ability to make reservations at the Hotel and allegedly fail to have
certain accessibility information.  See id. ¶ 25.  "The *Twombly*
plausibility standard . . . does not prevent a plaintiff from pleading
facts alleged upon information and belief where the facts are peculiarly
within the possession and control of the defendant."  Park v. Thompson,
851 F.3d 910, 928 (9th Cir. 2017) (alteration in original) (quoting Arista
Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)).  For the
purposes of this Motion only, the Court concludes Plaintiff is entitled to
rely on "information and belief" allegations in asserting that Defendant
failed to provide the required information to the third-party websites
offering reservations for the Hotel.[15]  However, Plaintiff has not

---

[13] Such guidance is "'entitled to substantial deference' and 'will be
disregarded only if plainly erroneous or inconsistent with the regulation.'"
Kohler v. Presidio Int'l, Inc., 782 F.3d 1064, 1069 (9th Cir. 2015) (quoting
Miller v. California Speedway Corp., 536 F.3d 1020, 1028 (9th Cir. 2008)).

[14] Defendant argues that it has "made available ADA-accessible rooms and
information to third-party reservation providers."  Mot. at 5 (citing Neilson
Decl., ¶ 17).  However, neither Neilson Declaration has a paragraph 17, nor
does either declaration appear to relate to information made available to
third-party providers.  See Dkt. 27-3 (Nielson Decl.); Dkt. 40-2 (Suppl.
Nielson Decl.).  Therefore, this argument alone cannot be used to challenge
Plaintiff's factual allegations to the contrary.

[15] The Court need not consider the district court cases that held that even
where a fact is "peculiarly within the possession of defendants," a Plaintiff
still must allege some other corroborating facts.  See Menzel v. Scholastic,
Inc., No. 17-CV-05499-EMC, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19,
2018) (interpreting Park to require allegations based on information and
belief to be "based on factual information that made the inference of
culpability plausible"); see also Del Castillo v. Cmty. Child Care Council of

sufficiently alleged that the Third-Party Websites actually violate the ADA in a way that affects Plaintiff's particular disability.

Plaintiff alleges that the Third-Party Websites "failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs" as required by 28 C.F.R. § 36.302(e)(ii).[16] SAC ¶¶ 41, 44. These allegations are insufficient for a number of reasons. First, the information Plaintiff alleges he needs in order to "assess independently" whether the Hotel meets his accessibility needs relate to wheelchair users and are therefore not tied to his disability. See id.¶ 7 (listing information about accessible entrances, accessible parking, accessible counters, and accessible rooms). Second, Plaintiff does not allege what information was missing from the Third-Party Websites. Plaintiff alleges that the booking websites "fail to include information about important features that do not comply with the Standards," id., but it does not allege what those features are. He also includes a few screen shots from the Third-Party Websites, but he does not allege that those screenshots contain the entirety of information on the websites related to accessibility information. Moreover, the

_____

Santa Clara Cty., Inc., No. 17-CV-07243-BLF, 2019 WL 6841222, at *7 (N.D. Cal. Dec. 16, 2019) (describing Menzel as "noting that even where the evidence is within the defendant's control, plaintiff still must allege specific facts which on information and belief make the inference of culpability plausible.").

[16] 28 C.F.R. § 36.302(e)(ii) provides:

> A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party . . . (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.

screenshots show that the Third Party Websites do contain at least
some disclosures related to accessible rooms.  For example, Hotels.com
informs the public that "[t]he hotel can offer wheelchair accessible
accommodations" and next to "Accessibility" the website lists
"[a]ccessible bathroom," "[i]n-room accessibility," and "[r]oll-in shower."
Addendum A at 18.  Further, in the screenshots contained in the body
of the SAC, there is a link to "show room information."  See SAC ¶ 43.
Plaintiff does not describe what information is contained in that link, or
what relevant information is missing.   It is not enough for Plaintiff to
claim in conclusory fashion that the Third-Party Websites do not have
"enough detail to reasonably permit Plaintiff to assess independently
whether Defendant's Hotel meets his accessibility needs."  He must
allege what information is missing from the website.  Beyond repetition
of the statutory text, Plaintiff has not alleged any specific information
that was missing on the website that would prevent him from being
able to stay at the Hotel.  See Spokeo, Inc. v. Robbins, 136 S. Ct. 1540,
1550 (2016) (Listing procedural violations without connecting them to
any particular harm is insufficient to plead standing).

        Third, even had Plaintiff identified information that was missing
from the websites that related to his disability, a website need not list
its compliance or non-compliance with every ADAAG provision to
satisfy 28 C.F.R. § 36.302(e)(ii).  The 2010 DOJ ADAAG Guidance on
this provision "recognizes that a reservations system is not intended to
be an accessibility survey," and "[b]ecause of the wide variations in the
level of accessibility that travelers will encounter . . . it may be
sufficient to specify that the hotel is accessible" and to provide basic
facts about each accessible room.  28 C.F.R. § Pt. 36, App. A.  Further,
the DOJ acknowledges that "individuals with disabilities may wish to
contact the hotel or reservations service for more detailed information."
Id.  This provides further support that websites need not include all
potentially relevant accessibility information; if a website was required
to have all relevant information, individuals would not need to call the
hotel to get further information.  Other district court cases have
reached the same conclusion.  See Strojnik v. 1315 Orange LLC, No.
19CV1991-LAB (JLB), 2019 WL 5535766, at *2 (S.D. Cal. Oct. 25, 2019)

(Plaintiff "does not cite any authority suggesting a hotel has an obligation to describe to the public the physical layout of its rooms in exhaustive detail without being asked"); <u>Kapalua Land</u>, 2019 WL 4685412, at *7 (recommending dismissal of ADA claim with prejudice and noting that "Plaintiff fails to cite to any legal authority providing that failure to detail all accessible and inaccessible elements of a public accommodation results in an ADA violation."); <u>Barnes v. Marriott Hotel Servs., Inc.</u>, No. 15-CV-01409-HRL, 2017 WL 635474, at *10 (N.D. Cal. Feb. 16, 2017) (granting summary judgement where the website "provides descriptions of accessible features . . . that include the level of detail proposed by the ADA Guidance document"); <u>but see</u> <u>Strojnik v. Resort at Indian Springs, LLC</u>, No. 19-CV-04616-SVK, 2019 WL 6913039, at *9 (N.D. Cal. Dec. 19, 2019) (denying Plaintiff's motion for summary judgment on the grounds that "[a]lthough Plaintiff has presented screenshots of several first- and third-party booking services relating to the Hotel, further development of the factual record is needed in order to determine whether Defendant violates the relevant provisions of the ADA"). Therefore, even if Plaintiff had sufficiently alleged the Third-Party Websites did not affirmatively state whether the Hotel was in compliance with specific ADAAG provisions (e.g. accessible parking, appropriate doors on accessible routes, etc.), Plaintiff still would not have stated a claim for violation of the ADA.

Plaintiff also alleges that the Third-Party Websites 1) failed to adequately disperse accessible rooms, 2) charge more for accessible rooms, and 3) failed to make reservations for accessible rooms available in the same manner as non-accessible rooms, in violation of 28 C.F.R. Sections 36.301(c)[17] and 36.302(e)(1)(i).[18]  SAC ¶¶ 9-10, 42-43, 45.

---

[17] 28 C.F.R. § 36.301(c) prohibits "impos[ing] a surcharge on a particular individual with a disability . . . to cover costs of measures . . . that are required to provide that individual . . . with the nondiscriminatory treatment required by the Act."

[18] 28 C.F.R. § 36.302(e)(1)(i) requires "reservations for accessible guest rooms" to be made "in the same manner as" non-accessible rooms.  Plaintiff bases

However, Plaintiff does not allege facts plausibly showing that he requires an accessible guest room, beyond the conclusory statement that he needs one. <u>See</u> SAC ¶ 8(j) (Plaintiff requires mobility accessible rooms because "his disabilities substantially limit him from equal access in a standard room"). For the reasons stated above, Plaintiff has not sufficiently alleged that barriers related to accessible rooms affect him because of his disability.

### 2.    Plaintiff's Alleged Injuries Are Not Actual or Imminent

Plaintiff asserts that the Court has imposed an impossible "requirement that Plaintiff allege *both* the intent to return *and* deterrence." Opp'n at 6 (emphasis in original). Plaintiff is wrong. As a former attorney who has, as lawyer or plaintiff, been involved in hundreds of these cases, the confusion on Plaintiff's part is perplexing. In its prior order, the Court analyzed whether Plaintiff's allegations sufficed under either standard and found they did not. The Court understands Plaintiff's opposition to abandon any claim based on the intent-to-return theory and to rely solely on the deterrence doctrine. <u>Id.</u> at 6.

To demonstrate deterrence, a plaintiff must allege "actual knowledge of illegal barriers at a public accommodation to which he or she desires access" and that "a defendant's failure to comply with the ADA deters her from making use of the defendant's facility." <u>CREEC</u>, 867 F.3d at 1098. Plaintiff alleges that he is deterred from visiting the Hotel because it is not ADA compliant "as such compliance related to Plaintiff's disability." SAC ¶ 18. However, Because Plaintiff has failed to allege that the Hotel's purported non-compliance with the ADA is related to his disability, he has failed to allege why that non-compliance deters him from staying at the hotel. <u>See</u> <u>Chapman</u>, 631 F.3d at 955 (Plaintiff must identify how each of the alleged barriers "deter him from visiting the Store due to his disability."); <u>see also</u>

---

this claim solely on the Third-Party Websites' claimed violation of 28 C.F.R. § 36.302(e)(1)(ii). <u>See</u> SAC ¶ 7(b).

<u>Strojnik v. Four Sisters Inns, Inc.</u>, No. 2:19-CV-02991-ODW (JEMx),
2019 WL 6700939, at *5 (C.D. Cal. Dec. 9, 2019) ("Plaintiff does not
allege how any feature at the Hotel is non-compliant with the ADA or
how it relates to his disability so as to deter him from staying at the
Hotel").

　　　　Further, where "the public accommodation being sued is far from
the plaintiff's home," the Ninth Circuit has found an "actual or
imminent injury sufficient to establish standing where a plaintiff
demonstrates an intent to return to the geographic area where the
accommodation is located and a desire to visit the accommodation if it
were made accessible." [19] <u>D'Lil v. Best W. Encina Lodge & Suites</u>, 538
F.3d 1031, 1037 (9th Cir. 2008).  In determining whether a plaintiff has
alleged an intent to return to the geographic area, the Ninth Circuit
has considered "the regularity with which [the plaintiff] visited the
city."  <u>Id</u>. (plaintiff had visited the area "approximately 1-3 times per
year" for more than a decade including "before, during, and after her
stay" at the defendant property); <u>see also</u> <u>Doran v. 7-Eleven, Inc.</u>, 524
F.3d 1034, 1040 (9th Cir. 2008) (plaintiff "plans to visit Anaheim at
least once a year on his annual trips to Disneyland"); <u>Pickern v.
Holiday Quality Foods Inc.</u>, 293 F.3d 1133, 1135 (9th Cir. 2002)
(plaintiff visits his grandmother who lives in the area almost weekly).
Plaintiff alleges he "has visited the Disneyland area 20± times in the

---

[19] Plaintiff's confusion about having to allege both deterrence and an intent-
to-return may stem from this language.  However, requiring that a Plaintiff
allege he will return to a geographic area far from his home and have some
preference to return to that accommodation over another is essential to
alleging he is plausibly deterred from patronizing the accommodation.  For
example, imagine that someone who lives in Miami traveled to Alaska on
vacation and encountered a snow shoe store with a barrier.  Unless that
person alleges that she plans to travel to Alaska again, she cannot plausibly
allege that she is currently deterred from patronizing the store.  Moreover,
assume that Alaska has a thousand snow shoe stores spread across various
locations.  If the individual cannot plausibly allege a preference to visit that
particular store on a return trip, she cannot plausibly allege that she is
deterred from visiting that store.

past and intends to visit the area on a regular basis." SAC ¶ 18(c).  He
"visited the Disneyland area on September 21, 2019 at a Holiday Inn
Express 8 miles away."  Id.  He travels to the Disneyland area to visit
Disneyland, confirm ADA compliance, spend the night on the way to
San Francisco and Napa, and attend hearings at the Santa Ana
courthouse.  Plaintiff has adequately pled an intent to return to the
Disneyland area.

   A desire to stay at the specific challenged hotel can be shown by
explaining a preference for that hotel.  See, e.g., D'Lil, 538 F.3d at 1038
(plaintiff had a "preference for staying at the Best Western Encina"
because of "the hotel's proximity to downtown, its accessibility from the
freeway, and its amenities, including lush gardening and fresh country
linen quilts"); Doran, 524 F.3d at 1040 (plaintiff visited the store "on
ten to twenty prior occasions" and "the store is conveniently located
near his favorite fast food restaurant in Anaheim"); Pickern, 293 F.3d
1133 at 1135 (plaintiff "patronized a number of Holiday stores," "is a
regular customer of the Holiday store in his hometown," and "look[s]
first to Holiday Foods grocery stores" when he needs groceries).  While
Plaintiff alleges that he "has lodged at Hilton Hotels countless times
previously, and, to the best of his memory, at this Hotel" and "prefers to
stay at Hilton properties because he and [his ex-wife] are members of
the Hilton Honors Rewards Program,"[20] SAC ¶¶ 18(f), 31, there are no
allegations as to why Plaintiff prefers this particular Hilton property,
as opposed to others in the "Disneyland area."  And, during his last two
visits to the Disneyland area, Plaintiff stayed at a Marriott, SAC ¶ 50,
and a Holiday Inn, id. ¶ 18(c).  Plaintiff's allegations are insufficient to
show that Plaintiff is deterred from staying at the Hotel.

   Plaintiff argues that the Ninth Circuit in CREEC lowered the
standard for what plaintiffs must allege to show deterrence at the

---

[20] Apparently, only Plaintiff's ex-wife is a member of the Hilton Honors
Rewards Program.  Nielson Decl. ¶ 4; Strojnik Decl. ¶ 30.  Moreover, Plaintiff
has not made a reservation or stayed at the Hotel in the last five years.
Nielson Decl. ¶ 3.

pleading stage.  In <u>CREEC</u>, the Ninth Circuit held that allegations that plaintiffs "intend to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance with the ADA" and "will visit the hotels when the non-compliance is cured" was sufficient.  867 F.3d at 1099.  However, the court also noted that "[m]aking case-by-case determinations about whether a particular plaintiff's injury is imminent is well within the competency of the district courts" and cited with approval an Eleventh Circuit case that considered "prior visits, proximity of residence to store, plans for future visits" and status as a tester.  <u>Id.</u> at 1100.  In that case, Plaintiff had visited the store on two prior occasions, he traveled to the area where the store was located on a regular basis because his attorney's office was less than two miles from the store, and he passed the store on the way to and from his attorney's office.  <u>Houston v. Marod Supermarkets, Inc.</u>, 733 F.3d 1323, 1336 (11th Cir. 2013).  The court noted that it might reach a different result if the plaintiff had "no particular reason to return."  <u>Id.</u>  Therefore, the Court does not read <u>CREEC</u> as requiring district courts to accept conclusory allegations of deterrence, devoid of any supporting facts indicating a preference to return to the Hotel.

Plaintiff's First Cause of Action under the ADA is DISMISSED without leave to amend.  Plaintiff has had ample opportunity to plead facts sufficient to support standing and has failed to do so.  The Court concludes Plaintiff cannot amend his complaint consistent with Rule 11 and therefore further opportunities for amendment would be futile.

## C.    State Law Causes of Action

"[I]f the federal claim [is] dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain the supplemental claims for adjudication."  <u>Herman Family Revocable Tr. v. Teddy Bear</u>, 254 F.3d 802, 805 (9th Cir. 2001) (alterations in original) (quoting 16 Moore's Federal Practice § 106.66[1]).  Because the Court dismisses Plaintiff's sole federal claim for lack of subject matter jurisdiction, Plaintiff's state law claims are DISMISSED without prejudice to refiling in state court.

## IV.  Conclusion

Plaintiff's First Cause of Action is DISMISSED without leave to amend.  Plaintiff's Second, Third, and Fourth Causes of Action are DISMISSED without prejudice to refiling in state court.

IT IS SO ORDERED.

Date: January 22, 2020

_____
Dale S. Fischer
United States District Judge